CITY OF PITTSFIELD *vs.* ANDREW T. OLEKSAK.

Berkshire.    December 10, 1942. — April 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Zoning.*

Preventing the owner of a certain farm of three hundred twenty-eight acres, of which one hundred fifteen acres were in timber, from using a portable mill and portable buildings for about three months to cut matured timber because the tract was in a district in a city where by a zoning ordinance the erection of a building or structure for an industrial or commercial purpose was precluded, would have been unreasonable and unconstitutional where it appeared that the district in question comprised about eight square miles largely of woodland with only twenty-five or thirty houses, and that the owner's operations would be neither a public nor a private nuisance, would not affect nor concern the public health, safety, morals, welfare or convenience, would not detract from nor injure the natural beauty of the general area and would not in any way affect the amenities of the city.

BILL IN EQUITY, filed in the Superior Court on June 27, 1942.

The suit was heard by *Hammond*, J. The plaintiff alleged exceptions to certain rulings by the trial judge and also appealed from a final decree dismissing the bill.

*J. M. Rosenthal*, City Solicitor, for the plaintiff.

*F. M. Myers*, for the defendant.

QUA, J. The bill prays for an injunction restraining the defendant from carrying on the business of cutting and sawing or removing standing timber on the defendant's premises known as "Westbrook Farm" in Pittsfield in alleged violation of the city's zoning ordinance, which includes Westbrook Farm in a "Residence 'A'" district, and which provides that in such district "no building or structure shall be erected which is intended or designed to be used, in whole or in part, for any industrial, manufacturing, trade or commercial purpose . . . ," with exceptions not material to the grounds on which this decision rests.

Material detailed findings of the trial judge are these: Westbrook Farm contains three hundred twenty-eight acres, upon which are a farm house and two barns situated about three and one half miles westerly of the city hall. The property is located on the westerly side of a highway known as Cascade Street. An old highway known as Brick House Mountain Road runs through it, but a portion of this road west of the farm has been abandoned. When the defendant acquired the farm in 1942 about one hundred fifteen acres were in timber, well matured and ready to be harvested. Nearly all the rest was grass land and pasture. The defendant, a lumber dealer, purchased the farm for the timber. Soon afterwards he moved in a portable sawmill, without shelter or roof, which he moves from place to place, three small portable shanties accommodating five wood choppers, and a portable lean-to for two horses. Normally the time required for harvesting the timber crop which it is desirable to cut would be about three months. The defendant has already cut about three hundred twenty thousand board feet. There remain about seven hundred thousand feet of white pine and about the same amount of hard wood. A large part of the hard wood has reached the stage where it will not further improve and will begin to diminish in value if not harvested within four or five years. The "Residence 'A'" district in question comprises about eight square miles lying westerly of Lake Onota and extending westerly to the Hancock town line. In the entire area there are only about twenty-five or thirty houses, all farm houses, except six or eight used as summer residences. More than three quarters of the area are covered with wood and timber in various stages of growth. The Pittsfield State Forest adjoins part of Westbrook Farm on the north, and the Pittsfield city farm adjoins a part on the south. One Bassett, whose land also adjoins the farm, has long maintained a small sawmill where he cuts his own timber and does "custom sawing" for nearby landowners.

The trial judge also made these general findings: The work of cutting and sawing being done by the defendant is not in any sense a noxious business and does not consti-

tute a fire hazard. It is not a public or a private nuisance. It does not in any way affect or concern the health, safety, morals, or welfare of any individual living within the eight square miles. It does not affect or concern the public health, safety, morals, welfare, or convenience. The situation of the farm is such that the cutting that has been done is not noticeable from the main travelled roads. No permanent scar will be made on the landscape. If the entire tract is cut over, it will not detract from or injure the natural beauty of this general area. The cutting of the mature timber will not in any way affect the amenities of the city of Pittsfield. The judge took a view of the premises.

Whether the impact of a zoning ordinance upon the particular use which a landowner desires to make of his land is a reasonable and permissible interference with his rights as owner in the exercise of the police power for the public benefit or is an arbitrary, unreasonable, and oppressive, and therefore forbidden, deprivation of private property without compensation often depends upon the peculiar circumstances of the particular instance. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 387, 395. It may be said that in such cases law and fact march together. The correct decision is to be found in the answer to the question whether the particular interference that causes injury to the individual can reasonably be thought to have some tendency to advance the interests of the public, either in the direct consequences, or indirectly by upholding the integrity of a system that as a whole may reasonably be thought to promote the interests of the public. *Lexington* v. *Govenar*, 295 Mass. 31, 36. *Wilbur* v. *Newton*, 302 Mass. 38, 39, 41. And of course all presumptions are to be indulged in favor of the validity of the ordinance in its application to all instances falling within its terms.

In the present instance, on the facts found, the application of the ordinance to stop the defendant's activities would permanently deprive the defendant, and therefore the community, of a valuable and otherwise wasting asset without accomplishing in the slightest degree, directly or indirectly, any of the purposes for which zoning is author-

ized.   The segregation of eight square miles of Berkshire country side, principally woodland, containing in all only twenty-five or thirty houses, as a "Residence 'A'" district, with minute restrictions adapted to an urban area, seems in itself an extreme exercise of the zoning power conferred upon municipalities by G. L. (Ter. Ed.) c. 40, § 25, as amended, for the purposes there set forth, and subject to the provision there contained, that "due regard" be paid to the "characteristics" of the different parts of the city or town.   Compare *Inspector of Buildings of Lowell* v. *Stoklosa,* 250 Mass. 52, 61.   It is unnecessary, however, for the purposes of this case to decide that this part of the ordinance as a whole is in excess of the power granted by the statute or unconstitutional.   The zoning of large undeveloped areas has been sustained in some localities, and it is proper to take into account the future uses to which the area is best adapted as well as its present condition.   *Spector* v. *Building Inspector of Milton,* 250 Mass. 63.   *Wilbur* v. *Newton,* 302 Mass. 38, 39, 42.   *Simon* v. *Needham,* 311 Mass. 560.   But the application of the ordinance to prevent the wholly harmless cutting of a matured crop of timber under the circumstances here shown — a temporary operation involving no permanent structures and no threat to the integrity of the zoning system — would, in our opinion, be unreasonable, arbitrary, oppressive, and unconstitutional.   The findings upon which this decision rests are comparable to those upon which a zoning ordinance was held unconstitutional in its application to a particular instance in *Nectow* v. *Cambridge,* 277 U. S. 183.   See also *People* v. *Hawley,* 207 Cal. 395, 407–414; *Strain* v. *Mims,* 123 Conn. 275, 285–290; *Forde* v. *Miami Beach,* 146 Fla. 676; *People* v. *Rockford,* 363 Ill. 531; *Harmon* v. *Peoria,* 373 Ill. 594; *Eastern Boulevard Corp.* v. *Willaredt,* 125 N. J. L. 173; *Dowsey* v. *Kensington,* 257 N. Y. 221; *Alexandria* v. *Texas Co.* 172 Va. 209; *Washington* v. *Roberge,* 278 U. S. 116; *Women's Kansas City St. Andrew Society* v. *Kansas City,* 58 Fed. (2d) 593; and cases collected in 86 Am. L. R. 659.

The plaintiff's bill of exceptions raises no question not

open on the appeal and was unnecessary. *L. P. Hollander Co. Inc., petitioner,* 301 Mass. 278, 279.

The final decree did not deal with a counterclaim wherein the defendant asks an injunction against the plaintiff. Such relief is no doubt unnecessary. We think that the decree should be modified by dismissing the counterclaim without prejudice. As so modified the decree is affirmed with costs to the defendant. The exceptions are overruled.

*Ordered accordingly.*