CHROME PLATING COMPANY, INC., Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

*January 15—February 16, 1945.*

For the appellants there were briefs by *Walter J. Mattison,* city attorney, and *Charles W. Babcock,* first assistant city attorney, and oral argument by *Omar T. McMahon,* assistant city attorney.

*William E. Burke* of Milwaukee, for the respondent.

ROSENBERRY, C. J. The situation will appear from the statement of facts made by the trial court in its opinion. With slight changes as to reference to exhibits, they are as follows:

The premises are located at the northwest corner of East Chambers street, formerly known as Chambers street, a street and highway in the city of Milwaukee, running in an easterly-and-westerly direction, and North Humboldt boulevard, formerly known as Humboldt avenue, a public highway running in a northerly-and-southerly direction in said city.

The premises consist of four lots, referred to in various exhibits as lots 17, 18, 19, and 20, and each of said lots is 134.43 feet long, and the aggregate of all four lots is 117.4 feet in width. The lots run in an easterly-and-westerly direction from Humboldt boulevard to an alley on the west.

On March 7, 1907, which was about thirteen years prior to the passage of the first general zoning ordinance by defendant city, one Lierman, the then owner of said lots, obtained a permit from defendant city and the then inspector of buildings, to erect, at a cost of $2,000, a one-story brick blacksmith shop, the actual dimensions of which shop were 25 feet by 55 feet, and which is designated as Building "C" on Exhibit 1, printed herewith. Since its erection, the said building was used as a blacksmith shop to the present time.

On May 28, 1907, the said Lierman, as owner of the premises, obtained a building permit from defendant city to erect, at a cost of $225, a ten-foot-high, one-story wagon shop, 24 feet by 18 feet. This wagon shop was built east of Building "C" on Exhibit 1, but moved to the northwest corner of the parcel in 1921, when Building "B" on Exhibit 1 was erected.

When the aforesaid buildings were permitted to be erected by the defendant city, the application clearly disclosed that they were to be erected on lots 17, 18, 19, and 20, which are the premises in question.

On November 15, 1920, the zoning ordinance and the use map were adopted, placing the premises in question in a residential zone.

This zoning ordinance, however, was amended on July 7, 1926, placing the boundary line between residence district to east and commercial and light manufacturing to west, 120 feet east of the east line of the now North Weil street, being west line of alley in the block, and was again amended on November 7, 1927, by the adoption of a new zoning use map, where the boundary line between residential, to the east, and commercial and light manufacturing, was a line 120 feet west of the west line of North Humboldt boulevard. This boundary line extended through both of the buildings situated upon the premises, consisting, as heretofore indicated, of four lots, in the commercial and light-manufacturing district, and the easterly 120 feet of said lots in a residential district.

On October 28, 1921, a permit was issued, upon application duly made to the city, to Kaczmarek and Nowicki as owners, for a "blacksmith-shop addition" to cost $2,500, which addition when completed was 45 feet by 85 feet, and was thereafter used by them until 1936 for auto garage and storage.

On August 25, 1925, the then owners, Kaczmarek and Nowicki, secured from the city of Milwaukee, upon application duly made, a permit for an "addition to garage," to cost $9,000, which when completed was 50 feet by 85 feet, and was used by them until 1936 for garage and auto-repairing purposes. This building is referred to as "A" on Exhibit 1.

Plaintiff acquired vendee's interest in the premises by land contract on January 21, 1937, and on January 29, 1937, plaintiff applied for permit to use Building "B" (Exhibit 1) for a chrome-plating works. The building inspector denied the application on April 14, 1937, and thereupon plaintiff appealed to the zoning board of appeals, which reversed the ruling of the building inspector and directed him to issue a temporary certificate of occupancy, and such certificate was issued, permitting the use of the premises for the purpose of conducting thereon chrome plating, for an indefinite period of time.

At the same time, proceedings were had by the president of the plaintiff, doing business individually as Sherin Company, to use Building "A" (Exhibit 1) for automobile body painting and repairing work, and such permit, pursuant to the decision of the zoning board, was issued to plaintiff, and both Buildings "A" and "B" (Exhibit 1) have since been used for such respective purposes.

On March 18, 1941, the building inspector refused to issue a permit to plaintiff to conduct a filling station on the premises known as 1030 East Chambers street (Building "A"), claiming that the premises were located in a residential district. Upon appeal to the zoning board of appeals, the ruling of the building inspector was reversed, and the appeal board directed the issuance of such occupancy permit.

On December 21, 1941, the building inspector granted a permit to Allis Auto Body to use the premises known as 1030 East Chambers street (which are part of the premises in question), for an auto-body repair shop, and on April 8, 1942, the building inspector granted a permit to Schwartzburg-Nash Company for storage of new automobiles.

On October 21, 1942, plaintiff petitioned the common council to rezone the entire premises from residence to commercial and light manufacturing, which petition was placed on file July 26, 1943.

On July 26, 1943, the common council adopted a resolution declaring that the use of a portion of said premises for chrome plating constituted a nuisance, and that action should be taken to terminate the violations of the zoning ordinance.

On July 26, 1943, the Sherin Company applied for an occupancy permit for Building "A" for "auto-body repair garage," which application the building inspector denied, and from which denial an appeal was taken to the zoning board of appeals, but was not prosecuted, and instead thereof this action was commenced by plaintiff.

Exhibit 34, printed herewith, is a photograph of the buildings and adjacent and surrounding premises and buildings.

Although the defendant city has not filed any cross complaint, it is conceded that unless the common council is restrained as prayed for by the plaintiff, the defendant city will take appropriate steps to enforce the resolution of July 26. 1943, to terminate the use of the premises by the plaintiff for light manufacturing and commercial business, and to compel removal of the buildings and structures therefrom.

Section 959—17n, Stats. 1919, which granted the defendant city authority to regulate and restrict the location of trades and industries, and the locations of buildings, and pursuant to which the zoning ordinances were adopted, provided that "such ordinances shall not prohibit the continuance of the use

Exhibit No. 1

*Exhibit No. 34*

of any building or premises for any trade or industry for which such buildings or premises are used at the time such ordinances take effect, but such ordinances may prohibit the alteration of, or addition to, any existing buildings or structures for the purpose of carrying on any prohibited trade or industry within the district where such buildings or structures are located." Thus the blacksmith shop and the wagon shop, which were erected many years before the adoption of the first zoning ordinance, are clearly within the protection of the statute.

The testimony and photographs in evidence show that the land on North Humboldt boulevard, north of the four lots upon which the buildings of the plaintiff are located, is occupied by residences that are well kept; and that across the street, to the south of plaintiff's premises, is located a super-service gasoline station, and that in the block west of the alley there are located large coal and lumber-supply buildings and a railroad right of way.

Counsel for the respective parties stipulated that in 1943 plaintiff's land, consisting of the four lots in question, was assessed at $6,000, and the improvements thereon at $16,000, and that the total taxes were $713.11.

The property today has a market value of $20,000 for the purposes for which it is used.

Plaintiff's premises, in the present condition, are suitable only for commercial and light-manufacturing uses.

The zoning board of appeals on April 18, 1941, reversed the ruling of the building inspector and directed the issuance of an occupancy permit, and the board found that "In the face of an open, notorious, and continuous use over a period in excess of eighteen years, and in the face of the uncontroverted testimony that the fact of this use was brought home to the city on numerous occasions, it strikes this board as being rather harsh to insist upon the discontinuance, in view of the history connected with the particular location."

If the resolution adopted by the common council of the defendant city "to petition the proper court to order the removal of any building or structure on said premises erected in violation of any ordinance," is carried out, the plaintiff would, of course, suffer great financial injury, as it would

also suffer loss if it was not permitted to occupy the buildings which it owns for the purpose for which they are at present used.

As conclusions of law the court found that the plaintiff was entitled to judgment declaring the ordinance adopted by the common council of the city of Milwaukee on November 15, 1920, and all amendments thereto and the resolution adopted by the common council of the city of Milwaukee on the 26th day of July, 1943, in so far as they affect the premises owned by the plaintiff and which are referred to herein, are each and all invalid, unconstitutional, void, and unenforceable; that the plaintiff is entitled to a permanent injunction perpetually restraining the defendant from enforcing said zoning ordinance with its amendments and the resolution of July 26, 1943, in so far as they affect the premises owned by the plaintiff; and further, that the plaintiff is entitled to an injunction perpetually restraining the defendants from revoking any building permits or any occupancy permits which were in force at the time of the commencement of this action; and further, that the plaintiff is entitled to a permanent injunction perpetually enjoining and restraining the defendants from refusing to permit plaintiff to conduct a general light-manufacturing and commercial business on said premises. From the judgment entered accordingly, the appeal was taken.

The only question involved is whether the defendant municipality had a right to enforce zoning ordinance use regulations as against plaintiff's property, under the circumstances of this case. The trial court held that under the undisputed physical facts the common council, in adopting the ordinance whereby the east 120 feet of plaintiff's premises are restricted to residential purposes, clearly exceeded the bounds of legislative discretion, and that the ordinance in that respect is unconstitutional and void and because it is clearly arbitrary and unreasonable, having no substantial relation to the public

health, safety, morals, or general welfare. It is to be noted that the trial court held no more than that the ordinance in question is invalid as applied to the property involved. There is practically no dispute in the evidence, from which it is evident that enforcement of the ordinance will work a very great hardship upon plaintiff and others similarly situated without any corresponding benefit upon adjacent property owners or the city itself and will not result in promoting the health or general welfare of the community.

No question is raised in regard to the validity of the zoning ordinance as a whole or as applied to other situations. It is difficult to see what prompted the common council to enact the resolution in question. It appears from one of the exhibits that directly east of the lots in question there is a park. Whether a desire to make the view from the park more presentable prompted the enactment of the ordinance does not appear, but if that was the reason for its enactment, so far as appears, it in no way promoted the public health, safety, morals, or general welfare.

It is not necessary to review the general principles relating to the enactment and validity of zoning ordinances. When it comes to a consideration of their application to particular facts and circumstances each case must be, as we have said, decided on its own facts. *Eggebeen v. Sonnenburg* (1941), 239 Wis. 213, 1 N. W. (2d) 84.

We concur in the conclusion of the trial court that, as applied to the property in question, the ordinance, amendments, and resolutions are arbitrary and unreasonable and hence invalid and unenforceable.

*By the Court.*—Judgment affirmed.