BARNEY AND CAREY COMPANY *vs.* TOWN OF MILTON.

Suffolk.    March 8, 1949. — June 15, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Zoning. Constitutional Law*, Zoning, Police power. *Laches. Equity Jurisdiction*, Laches.

Laches on the part of a landowner was not shown merely by delay in attacking a zoning by-law on the ground that as applied to his land it was unreasonable, unconstitutional and invalid.

The zoning by-law of the town of Milton was, on the facts shown, unreasonable, unconstitutional and invalid in so far as it zoned only for residential purposes a certain triangular parcel of land not readily useable for dwellings, located some distance from any dwelling, and bounded by the Neponset River, extensive marshes, and a highway beyond which was further extensive marshland.

PETITION, filed in the Land Court on January 9, 1947.

The case was heard by *Courtney*, J.

*T. H. Donohue*, for the petitioner.

*F. B. Frederick*, Town Counsel, (*F. H. Perry* with him,) for the respondent.

RONAN, J.  The petitioner, the owner of a parcel of land in Milton, filed this petition in the Land Court in accordance with G. L. (Ter. Ed.) c. 240, § 14A, and c. 185, § 1 (j ½),

both as inserted by St. 1934, c. 263, to determine the validity of a zoning by-law as applied to this particular parcel, which was zoned in a residential district. The petitioner appealed from the judge's decision that the by-law was valid and applied to its full extent to the said land.

The petitioner in 1926 acquired a triangular piece of land of a little more than six acres, which was bounded on the north for four hundred fifty-seven and fifty-five one hundredths feet by the Neponset River, on the southwest by Granite Avenue for a distance of one thousand seventy-eight and one tenth feet, and southeasterly by marshland for a distance of one thousand seven feet. The Neponset River is the boundary between Boston and Milton. The marshland adjoining the southeasterly side of the locus consisting of about forty acres extends easterly to the boundary of the city of Quincy and also extends southerly from the river from one third to one half mile. This adjoining tract of marshes has never been developed or improved. The southerly end of this marshland at Granite Avenue extends to a natural upland known as Courtland Circle, which is occupied by numerous residences. Opposite the petitioner's land on the westerly side of Granite Avenue and extending southerly for a distance of about a mile from the river is a wide expanse of unimproved marshland, known as the Metropolitan Reservation and under the supervision and control of the metropolitan district commission. This reservation extends westerly for about a mile to the foot of Milton Hill which comprises a fine residential section. The locus is in about the middle of the northerly boundary of a tract of marshes which adjoins the southerly bank of the Neponset River and extends from Milton Hill to the city of Quincy.

The petitioner's land is partly natural upland and partly filled. Considerable inexpensive filling has been made in the rear of the lot to keep out the water and debris washed in by the tide. At very high tides practically the whole of the middle portion of this parcel of land and much of the rest of the premises are flooded. In 1944 and 1945 the

petitioner expended $3,000 for cheap fill for this middle part of the parcel to protect the remainder of its land from the tide and accompanying debris. The top soil is soft and not suitable for the construction of heavy buildings. It is necessary to go down various depths to reach solid ground. At one point hardpan was reached thirty-eight feet below the surface. Ordinary two-story dwellings would probably need some special foundation to prevent settling. A main lumber shed on the parcel is supported by piles, and the fill around this shed has settled to a noticeable degree, probably due to heavy trucking over it, and possibly some of the fill has been carried away as dust and some by the action of the tide. Heavy construction would require piling or a solid concrete mat. This would increase the cost of building for residential or commerical purposes. This additional cost of construction of dwellings "may well be a discouraging factor at present but a decreasing availability of suitable home sites in such a desirable community and so close to Boston may well be incentive enough to induce home construction in the future."

Prior to the adoption of a zoning by-law by the town in 1922, a part of the premises had been used as a coal yard. The owner had in the summer of 1926 secured a variance in the application of this by-law which permitted the use of the entire premises for a wide variety of purposes. The petitioner purchased the premises in October, 1926, and has since used the northerly portion, having a frontage of five hundred thirty feet on Granite Avenue, for a wholesale and retail lumber business. In 1932 a small portion of the original parcel forming its southerly apex and having a frontage of one hundred fifty feet on Granite Avenue was sold by the petitioner and since has been used for a gasoline filling station. The land between the part used for the lumber yard and the filling station and fronting on Granite Avenue for about four hundred feet has remained unimproved and is hereinafter referred to as the vacant lot. The petitioner apparently secured two variances from the board of selectmen in 1932; one apparently referred to the part of the premises

used as a lumber yard and the other to the filling station lot, the petitioner agreeing that the former variance granted in 1926 was null and void as to the vacant lot and relinquishing any benefit or rights as to this vacant lot which it might have acquired under the variance of 1926. The zoning by-law of the town was revised in 1938 and also has been amended, but the petitioner's land has since the original by-law of 1922 been zoned in a residential district.

The board of selectmen, apparently acting as a board of appeal, when it granted the variances in 1932 found that the petitioner's premises were chiefly marshland and were at one time used as a dump; that the land was filled for a distance of one hundred fifty feet from Granite Avenue; that there was an old wharf on the northerly part of the premises which was used in connection with a coal business prior to the enactment of the zoning by-law in 1922; that the buildings used in the coal business had been torn down and the coal business discontinued; and that the nearest dwelling house was one third of a mile away. It further found that, "from the nature of the land, its natural surroundings, and its proximity to the Neponset River and the industrial district of the city of Boston . . . the land is not fitted for residence purposes or for other purposes permitted by the zoning by-law within the residence district of the town and consequently that enforcement of the zoning by-law would involve practical difficulty and unnecessary hardship and that relief may be granted without substantially derogating from the intent or purpose of such by-law."

The judge found that the petitioner's use of its land as a lumber yard was not sufficiently different in character from its original use as a coal yard to defeat a valid nonconforming use if one existed when the by-law first became effective in 1922, and the respondent concedes that it is immaterial for present purposes whether the petitioner's lumber business is carried on under a variance or as a nonconforming use. What the petitioner is seeking is to free its land from the restrictions which the by-law purports to impose. The relief sought has nothing whatever to do with spot zoning,

so called, as the respondent argues. The petitioner is not requesting any affirmative action by the town.

The respondent does not now contend that the maintenance of the petition is barred by *Spector* v. *Building Inspector of Milton*, 250 Mass. 63, which held that the general and comprehensive zoning plan adopted by the town in 1922 came within constitutional bounds and also the provisions of the enabling statute, and further that the petitioner in that case, who owned a piece of real estate in a different part of Milton from the land now in question, was not wrongfully deprived of any proprietary interests by a zoning regulation that placed his land in a residential section. The petitioner, in the instant case, does not attack the validity of the general plan of the zoning by-law or contend that the town lacked authority to exclude business from a residential zone, but merely contends that the application of the zoning regulation to its land is an arbitrary, unreasonable, and oppressive interference with its rights in the property and is violative of the provisions of the Constitution of the Commonwealth and the Fourteenth Amendment to the Constitution of the United States. The *Spector* case was rightly decided, and nothing here said is inconsistent with what was settled there. A decision sustaining the validity of a comprehensive zoning regulation does not preclude a landowner from showing that the regulation cannot be lawfully applied to a specific parcel of land in the peculiar circumstances connected with that parcel of land. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. *Nectow* v. *Cambridge*, 277 U. S. 183. *People* v. *Rockford*, 363 Ill. 531. *People* v. *Chicago*, 402 Ill. 321. *Glencoe Lime & Cement Co.* v. *St. Louis*, 341 Mo. 689. *Chrome Plating Co. Inc.* v. *Milwaukee*, 246 Wis. 526.

The contention that the petitioner was guilty of laches cannot be sustained. Mere delay in attacking the validity of the by-law, with nothing to show that any prejudice or disadvantage thereby resulted to the respondent, does not constitute laches. *Westhampton Reservoir Recreation Corp.* v. *Hodder*, 307 Mass. 288. *Goldstein* v. *Beal*, 317 Mass 750,

759. *Porotto* v. *Fiduciary Trust Co.* 321 Mass. 638, 644.
The existence of a zoning by-law, which purports to apply
to one's land but which in fact cannot be lawfully applied,
constitutes a direct invasion of the rights of the owner,
and it has been said that mere acquiescence on the part of
the owner for whatever period of time does not legalize a
usurpation of power which violates rights protected by
constitutional provisions. *Forbes* v. *Hubbard,* 348 Ill. 166.
*Harmon* v. *Peoria,* 373 Ill. 594. No question of waiver or
estoppel has been pleaded or considered by the judge, whose
decision shows that the only issue determined by him was
the validity of the by-law in its application to the petitioner's
land. We confine our discussion to that issue.

The power to regulate the use of property under zoning
regulations is a branch of the police power. The extent of
the exercise of this division of the police power and its
limitations have long been settled in this Commonwealth
and have been so fully discussed in recent decisions that it
is not necessary to repeat what has there been said. *Wilbur*
v. *Newton,* 302 Mass. 38. *Simon* v. *Needham,* 311 Mass.
560. *Burlington* v. *Dunn,* 318 Mass. 216. *Caires* v. *Building
Commissioner of Hingham,* 323 Mass. 589. Where the
application of the by-law to a particular parcel of land or
to a specific use of the land together with the attending
peculiar circumstances demonstrates that the imposition
of the zoning regulation in such an instance has no real or
substantial relation to the public safety, public health or
public welfare but would amount to an arbitrary, unreason-
able, and oppressive deprivation of the owner's interest in
his private property, then that application of the regulation
has been struck down. *Pittsfield* v. *Oleksak,* 313 Mass.
553, 556. *122 Main Street Corp.* v. *Brockton,* 323 Mass. 646.

The locus is bounded by a river which forms the town
boundary, by a broad main highway, and by a wide expanse
of the adjoining marshes separating it from the nearest
dwellings. It is virtually isolated by the nature of its
boundaries which serve as barriers that would prevent the
commercial use or occupation of the land from having any

real and substantial detrimental effect upon any other property in the general vicinity, excepting a use that would emit smoke, fumes or noise in sufficient volume to travel over the marshes to some residential section. There is no suggestion that any such use is contemplated or that, if it were, a zoning regulation could not be enacted to curb such an effect without zoning to the extent of prohibiting all use except for residential purposes. The reservation on the opposite side of Granite Avenue also serves as a protective belt to the nearest dwellings on Milton Hill, which is about a mile away. The location stamps the locus as one upon which various business activities may be conducted without any actual detriment to any other land located in this zoning district and without adversely affecting the public welfare.

The character of the land itself limits the purposes for which it is available. Of course, it is possible to build a dwelling on a piece of a low marshland by supporting the structure on piles or upon a solid concrete mat, to waterproof the cellar if there is to be one, and to take other necessary measures to secure sanitary drainage and to protect the land and structure from tidal floods. There is no present market for such land as sites for homes. The adjoining marsh of about forty acres still remains in its original condition and, judging the future by the past, is likely to remain so, at least in our day and generation. The judge found that the additional cost for piling or for a concrete mat might "be a discouraging factor at present but a decreasing availability of suitable home sites in such a desirable community and so close to Boston may well be incentive enough to induce home construction in the future." At most this is an expression of prophecy rather than a finding of fact and, even if it should be regarded as the latter, a landowner ought not to be compelled to hold his land upon the more or less remote possibility that sometime in the future, whether immediate or distant, there might be an opportunity to use his land for the erection of dwellings although, as the judge points out, there is no such present demand. Such a hope is too visionary to override constitutional

limitations. *Forde* v. *Miami Beach*, 146 Fla. 676. *Arverne Bay Construction Co.* v. *Thatcher*, 278 N. Y. 222. In *Wilbur* v. *Newton*, 302 Mass. 38, and *Simon* v. *Needham*, 311 Mass. 560, the land itself was suitable for the erection of dwellings and there was a present demand for dwellings at or in the immediate vicinity of the locus.

The judge found that the presence of commercial buildings may well give one approaching the town a wrong impression of the residential character of the town, and that the extension of such a commercial appearance would further intensify this impression. His decision states that the residents of Milton Hill and Courtland Circle have an unobstructed view of the petitioner's land and the marshes. The view from the residences on Courtland Circle would be adversely affected by additional unsightly structures and objects on the petitioner's land, and this, together with the additional noise, dust and dirt caused by the further commercial use of the land, would render these homes less desirable for residences. This latter finding is not equivalent to a finding that the land could not be used for any different business than as a lumber yard without creating additional noise, dust or dirt, which would reach the residences in question. There are undoubtedly many commercial uses to which the land might be put without any such results. It is to be observed that the petition was directed solely to attacking the validity of the by-law as applied to the land and was not seeking a determination of the extent to which the by-law "affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition." G. L. (Ter. Ed.) c. 240, § 14A, as inserted by St. 1934, c. 263, § 2. No proposed use is stated in the petition or mentioned in the decision. The case was apparently tried upon the question of the applicability of the by-law to the land and also upon the extent that the by-law was applicable. The judge found that there were no circumstances which make the application of the by-law to the land unreasonable or dis-

criminatory, and that it was "in full force and effect and binding in all its provisions upon the land of the petitioner described in the petition." The effect of the decision is that the by-law limits the uses of the land strictly to residential purposes.

Aesthetic considerations may not be disregarded in determining the validity of a zoning by-law, but they do not alone justify restrictions upon private property merely for the purpose of preserving the beauty of a neighborhood or town. The decision itself plainly demonstrates that the judge in reaching his conclusion relied principally upon the fact that the elimination of these residential restrictions upon the petitioner's land would be likely to give one entering the town from Boston and along Granite Avenue a wrong impression of the attractiveness of the town as a residential community and also that the removal of the restrictions might result in interfering with the panorama of river and marsh now enjoyed by those living on elevated land some distance away. It has been held that a piece of marshland which was formerly occupied by a lumber company and which was useless for residence purposes could not properly be zoned for such purposes where it appeared that one of the primary reasons for the enactment of the zoning by-law was that, if the premises were used for the drilling of oil, the masts and derricks would be visible from residences located upon a nearby bluff. *North Muskegon* v. *Miller*, 249 Mich. 52. A by-law adopted for the purpose of providing a beautiful and dignified village frontage along a public way in order that those passing along the way would be impressed with its desirability as a residential community was not a sufficient basis for the existence of the by-law. *Dowsey* v. *Kensington*, 257 N. Y. 221, 230. Undue weight must not be given to aesthetic considerations which can only play an incidental or ancillary role to some real, substantial, and sufficient basis for the imposition of zoning restrictions. Regard for the preservation of the natural beauty of a neighborhood makes the enactment of a zoning regulation desirable but does not itself give vitality to the regulation. *Welch* v.

*Swasey,* 193 Mass. 364, 375. *Opinion of the Justices,* 234 Mass. 597, 604. *Ayer* v. *Commissioners on Height of Buildings in Boston,* 242 Mass. 30, 35. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works,* 289 Mass. 149, 184, 185. *Lexington* v. *Govenar,* 295 Mass. 31, 36, 37. *Burlington* v. *Dunn,* 318 Mass. 216, 222. *122 Main Street Corp.* v. *Brockton,* 323 Mass. 646, 650.

On an appeal from a decision of the Land Court, the findings of fact appearing in the decision, which is deemed a part of the record, *Boston* v. *Lynch,* 304 Mass. 272, 274; *Harrington* v. *Anderson,* 316 Mass. 187, 192, must ordinarily be accepted as final. *Holmes* v. *Barrett,* 269 Mass. 497, 499. *Lund* v. *Cox,* 281 Mass. 484, 492. In the instant case, every physical fact material and necessary to determine the legality of applying the by-law to the locus is fully disclosed by the decision and supported by various exhibits, including maps, plans and photographs of the land and the surrounding areas. The by-law must be reasonable to be valid. Its reasonableness is essentially connected with the power or competency of the town to adopt it and in this case to enforce it as to the petitioner's land. The reasonableness of the by-law as to its application to the locus is to be determined by the location, size and characteristics of the land, the nature and use of adjoining land and other land in the general vicinity, and all other physical aspects that are involved, rather than the conclusions of the judge which are inconsistent with the basic facts appearing in his decision. In the face of these underlying and fundamental facts, it is plain that the imposition of residential restrictions upon the petitioner's land can have no rational relation to any of the purposes which would justify the application of the by-law to the locus. *Pittsfield* v. *Oleksak,* 313 Mass. 553. *122 Main Street Corp.* v. *Brockton,* 323 Mass. 646. *Strain* v. *Mims,* 123 Conn. 275. *Metropolitan Life Ins. Co.* v. *Chicago,* 402 Ill. 581. *Ervin Acceptance Co.* v. *Ann Arbor,* 322 Mich. 404. *Glencoe Lime & Cement Co.* v. *St. Louis,* 341 Mo. 689. *Dowsey* v. *Kensington,* 257 N. Y.

221, *Gilfillan's Permit,* 291 Pa. 358. *McCabe* v. *Zoning Board of Review of Providence,* 50 R. I. 449.

We do not mean that the petitioner's land cannot be subjected to restrictions that will bear a rational relation to the public safety, health, and welfare, and regulate the use of the land to this extent. We only say that this result cannot be constitutionally accomplished by a regulation limiting its use to those uses permitted in a residential zone.

The decision of the Land Court is reversed, and a decision is to be entered adjudging the zoning by-law invalid as applied to the petitioner's land.

*So ordered.*