Town of Lexington *vs.* Benjamin A. Simeone & another.

Middlesex.    April 2, 1956. — May 7, 1956.

Present: Qua, C.J., Wilkins, Williams, Counihan, & Whittemore, JJ.

*Zoning.    Constitutional Law,* Zoning, Police power.

The record in a suit in equity did not require a finding that a fifty-nine
acre tract, formerly part of a farm, which contained two small ponds,
a swamp and gravel pits and was situated in a much larger unde-
veloped and wild area somewhat removed from the center of a town
was practically useable only as a source of sand, gravel and like mate-
rials or a finding that the zoning by-law of the town was unrelated to
any of the statutory objects of zoning, unreasonable and unconstitu-
tional so far as it placed that area, including the tract, in a single
residence district where farming was allowed but the removal of such
materials was in general forbidden without a permit.

Bill in equity, filed in the Superior Court on December
24, 1951.

The suit was heard by *Cahill,* J.

*George A. McLaughlin, (Richard M. Gilman* with him,)
for the defendants.

*Harold E. Stevens,* Town Counsel, for the plaintiff.

Wilkins, J.    The purpose of this bill in equity is to en-
join the removal of sand and gravel, contrary to the zoning
by-law of the town of Lexington, from land of the individual
defendant located in a residence area.    From a final decree
of injunction, the defendants appealed.

The judge made a report of the material facts found by
him, the substance of which follows.    On June 29, 1944,
the individual defendant (hereinafter called the defendant)
acquired title to a tract of fifty-nine acres in an R 1 dis-
trict.    Thereafter he made a contract with the defendant
B. A. Simeone, Inc., whereby it was permitted to strip, ex-
cavate, remove, and sell loam, gravel, and other earth.    The
corporate defendant brought on the land heavy equipment,

including a steam shovel and trucks, which it used periodically, until enjoined in 1951, in order to strip, excavate, remove, and sell large quantities of loam, gravel, and other earth for use elsewhere by the defendants and other contractors. The removal of these materials was made without the permission of the board of appeals, was not incidental to or in connection with the erection of a building for which a permit had been issued, and was not required in order to construct a street over the location from which such removal was made.[1] Under the zoning by-law all uses not expressly permitted are forbidden. An R 1 district is a one family dwelling district, where land or buildings cannot be used for business purposes.

The issue of the existence of a nonconforming use was decided adversely to the defendants, the judge stating, "On this issue there was much disputed evidence and I found the defendants had not sustained the burden of establishing such preëxisting nonconforming use." The defendants contend that this finding is plainly wrong. We cannot agree. The reported evidence bears out fully the judge's statement that much evidence on this issue is in dispute. A very large part is oral. There would be no value in recounting it. We have considered everything carefully. We repeat a principle we have often stated. The trial judge, who saw the witnesses, occupied a superior position to that occupied by us, who have seen only a printed record, for determining the weight and credibility of the oral testimony and the inferences to be drawn therefrom. *Murphy* v. *Hanlon,* 322 Mass. 683, 685. *Ross & Roberts, Inc.* v. *Simon,* 326 Mass. 12, 17. *Willett* v. *Willett,* 333 Mass. 323, 324.

The answer of the defendant alleges that "by reason of its topography, including a swamp and two ponds, hills, ridges or hogbacks, the defendant's land . . . is of little

---

[1] The zoning by-law, § 9 (b), contains this provision: "The removal of sod, loam, sand, gravel or quarried stone, except when such removal is incidental to and in connection with the erection of a building for which a permit has been issued by the building inspector or when such removal is required in order to construct a street over the location from which such removal is made, is hereby expressly prohibited, unless with specific permission from the board of appeals."

present value except as a source of sand, gravel, loam, fill and other earthen products, including humus; is unsuited for building or for tillage; that the placing of this locus in the R 1 zone was unreasonable and capricious, was not a valid exercise of its police power by the town of Lexington, and that the operation of said zoning by-law as to this locus is unreasonable and destroys the rights in this locus secured to this defendant by the Fourteenth Amendment to the Constitution of the United States of America."

The only reference to this issue in the judge's findings is the statement that the defendants "also challenged the validity of the zoning by-law as it applied to the land in question and I found and ruled said by-law valid." Thus, we find ourselves in very much the position as we did in *Seekonk* v. *John J. McHale & Sons, Inc.* 325 Mass. 271, 272. Whatever testimony there is which now might be thought applicable to this issue consists largely of references to a plan and to aerial photographs taken in 1930, which, on the testimony, require expert interpretation. The defendant's fifty-nine acres are on Maple Street and are situated in a much larger area, which is somewhat removed from the center of the town, and which is zoned for single dwellings. From 1920 to 1940 the locus was part of the so called Ryder farm, where at one time or another cattle grazed, there was a barn, pigs were raised and housed, and chickens and turkeys were raised and sold. In an R 1 district farming is, and always has been, a permitted use.

The general character of the town of Lexington is matter of common knowledge. As to Lexington, could be repeated much which was expressed as to the neighboring town of Concord in *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 197. When this suit was begun, the zoning by-law in effect was the 1950 revision. The zoning by-law was originally adopted in 1929. There were also revisions in 1937 and 1946. The defendant's land since 1929 has been continuously in an R 1 district.

No finding is required that it is of little present value except as a source of gravel and other material, or that it cannot be used as it was when part of the Ryder farm, or that it is unsuited for building. In fact, the defendant testified that he intended ultimately to develop the real estate and had been before the planning board on three occasions to have a subdivision plan approved. See G. L. (Ter. Ed.) c. 41, § 81P, as appearing in St. 1953, c. 674, § 7, as amended by St. 1955, c. 326. His contention that the development will not be in the foreseeable future may well be correct, but there is no direct evidence on the point.

We are in no position to undertake to make a detailed description of the locus, as to the nature of which the parties do not agree. Many of the defendants' statements of purported facts are not supported by the record. It does not appear that there are only a half dozen scattered residences in the "whole area surrounding the locus," or that there has been no new construction in thirty years, or that there will be none in the foreseeable future. In any event, nothing compels such findings. The general area, viewed as a whole, is undoubtedly undeveloped and wild. The locus contains two small ponds and a swamp. Unquestionably, there are gravel pits both in the vicinity and in the locus, where the defendants, for over seven years beginning in 1944, carried on a business of removing gravel and other material. The presence of gravel, however, does not, of itself, render the by-law unreasonable. Nor would that result follow merely from a small number of residences in the area, the proper development of which it is a purpose of the by-law to ensure. There is no constitutional right to convert wild land into waste land.

A zoning by-law is presumed to be valid and will be sustained unless it is shown that there is no substantial relation between it and the furtherance of any of the general objects of the zoning statute. *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589, 594–595. *Lundy* v. *Wayland,* 328 Mass. 581, 583. *Kaplan* v. *Boston,* 330 Mass. 381, 383–384. *Raymond* v. *Commissioner of Public Works of Lowell,* 333

Mass. 410, 413. It rightly is not contended that a provision prohibiting sand, gravel, and loam removal is invalid. *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283 (upholding the by-law presently before us). *Burlington* v. *Dunn,* 318 Mass. 216. *Billerica* v. *Quinn,* 320 Mass. 687. *Butler* v. *East Bridgewater,* 330 Mass. 33, 36. This is equally true where a permit to remove is subject to the permission of the board of appeals. *Raimondo* v. *Board of Appeals of Bedford,* 331 Mass. 228.

With respect to the contention that the zoning by-law is unconstitutional or invalid as applied to the defendant's land, the test is whether its provisions "are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 395. *Nectow* v. *Cambridge,* 277 U. S. 183, 187–188. *Wilbur* v. *Newton,* 302 Mass. 38, 39. The correct decision, which often varies with the circumstances of the particular case, depends upon whether the by-law "can reasonably be thought to have some tendency to advance the interests of the public, either in the direct consequences, or indirectly by upholding the integrity of a system that as a whole may reasonably be thought to promote the interests of the public." *Pittsfield* v. *Oleksak,* 313 Mass. 553, 555. There is a great difference between the temporary effect of "the wholly harmless cutting of a matured crop of timber under the circumstances" shown in the case last cited (page 556), and the irreparable blight which the defendants' business activities might impose upon this neighborhood. In *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, there was, practically speaking, no use left for the locus when zoned for residences and not for business. We cannot reach that conclusion on the evidence in this case. Here it is reasonable to think that the interests of the public may be advanced by the inclusion of the defendant's land in an area zoned for single family dwellings, and that it is likewise reasonable to enjoin the removal therefrom of gravel and other material whether in the conduct of a business or not.

*Decree affirmed.*