AMBERWOOD DEVELOPMENT CORPORATION & another[1] *vs.*
BOARD OF APPEALS OF BOXFORD & another.[2]

No. 04-P-1599.

Suffolk. September 13, 2005. - November 29, 2005.

Present: GREENBERG, KANTROWITZ, & MILLS, JJ.

*Practice, Civil,* Declaratory proceeding. *Zoning,* Frontage, By-law, Validity of
by-law or ordinance. *Subdivision Control,* Frontage on public way, Zoning
requirements.

In an action brought in the Land Court under G. L. c. 240, § 14A, the judge
erred in ruling that a provision that prohibited the further subdivision of a
lot that had benefited from an exception to the frontage requirement in the
local zoning by-law was invalid as applied to the plaintiff landowner's lot
of residentially zoned land, where the judge failed to make, and the record
would not support, a finding of any significant injury to the plaintiff, and
where the relief allowed by the Land Court judge undermined the uniform
application of otherwise valid local zoning. [208-213]

CIVIL ACTION commenced in the Land Court Department on
June 20, 2000.

The case was heard by *Karyn F. Scheier,* J., on motions for
summary judgment.

*Katharine Goree Doyle* for the defendants.

*Alan L. Grenier* for the plaintiffs.

MILLS, J. In an action brought by Amberwood Development
Corporation (Amberwood) under G. L. c. 240, § 14A, a judge
of the Land Court, reversing the zoning board of appeals of
Boxford (board), ruled that the application of a provision that
prohibits the further subdivision of a lot that has benefited from
an exception to a frontage requirement in the zoning by-law,
while otherwise valid, was unconstitutional as applied to

[1]John C. Sanidas, as trustee of the Sanidas Family Trust.
[2]Town of Boxford.

Amberwood's lot of residentially zoned land.[3] This is the town's appeal. We reverse.

1. *Background.*[4] Amberwood owns an 8.1 acre lot of land on Georgetown Road in Boxford.[5] The lot was created in 1997 when Amberwood obtained approval to subdivide a tract containing approximately twenty-two acres into four separate lots, including the locus.[6] John C. Sanidas, as trustee of the Sanidas Family Trust, is the owner of, and resident at, 7 Amberwood Lane (Sanidas house lot), which abuts the locus to the north.[7]

Both the locus and the Sanidas house lot are in a residential zoning district where the minimum lot area is two acres, and the minimum street frontage is 250 feet. The locus has frontage of only one hundred feet along Georgetown Road, but Amberwood was able to build a single family home on the locus by taking advantage of a "frontage exception for larger lots" (frontage exception) in the Boxford zoning by-law, § 196-24.D(3), which provides as follows:

> "(a) Notwithstanding the [otherwise applicable dimensional provisions, including minimum street frontage of 250 feet], a lot in an R-A Residence-Agricultural District need not have the specified amount of street frontage, provided that:

---

[3]Amberwood had initially sought relief in the Land Court under G. L. c. 40A, § 14A, from the board's denial of its request for a variance. The plaintiffs waived their appeal of that decision in the Land Court and, therefore, that appeal is not before this court. Amberwood also included in its count under G. L. c. 240, § 14A, a claim that the by-law provision was generally invalid. That claim of general invalidity has been abandoned and is, therefore, deemed waived.

[4]Facts are essentially taken from the judge's succinct and thoughtful decision on cross motions for summary judgment. There appears, as between the parties, no genuine dispute as to any of the material facts.

[5]We will call the lot the "locus." It is a single lot, though shown as parcels C-1 and C-2, collectively, on a sketch plan in the addendum to this opinion.

[6]The locus evolved and changed slightly from a lot that was created in the 1997 subdivision plan. To the extent relevant, for purposes of this decision, the locus is essentially one of four lots created by Amberwood in its 1997 subdivision.

[7]At the time of proceedings before the town with respect to this case, Sanidas was the president and treasurer of Amberwood.

"[1] The area of the lot exceeds by at least four acres the minimum area required for such an R-A District;

"[2] The lot has a minimum continuous street frontage of not less than 50 feet and a width of not less than 50 feet at any point between the street and the site of the dwelling;

"[3] There is not more than one other such lot with frontage contiguous to it; and

"[4] It is not, in the opinion of the Planning Board, so located as to block the possible future extension of a dead-end street.

"(b) *Notwithstanding any other provisions, no such lot as described in Subsection D(3)(a) above on which a dwelling is located shall be hereafter subdivided, reduced in area*" (emphasis added).

In March of 2000, Amberwood, seeking to convey a two-acre portion of the locus (parcel C-2) to become part of the Sanidas house lot, sought a variance (G. L. c. 40A, § 10) from subsection (b) of the frontage exception provision which otherwise prohibited the two-acre reduction of the area of the 8.1 acre locus, a lot that had been created by Amberwood utilizing subsection (a) of that provision. When the board denied the variance request, Amberwood appealed pursuant to G. L. c. 40A, § 17, adding a second count to its complaint pursuant to G. L. c. 240, § 14A, challenging the frontage exception provision generally and as applied to the locus in these circumstances.

The Land Court judge noted the legitimacy of the purposes for the frontage exception, ruling it a valid zoning by-law provision. However, upon the precedent of *Barney & Carey Co.* v. *Milton,* 324 Mass. 440 (1949), and *Pittsfield* v. *Oleksak,* 313 Mass. 553 (1943), she ruled that the by-law provision could not legitimately be applied to the locus. The judge decided that the principal purposes of that provision of the by-law, preservation of open space and prevention of further development, would remain unoffended and unaffected by the conveyance out of the two-acre parcel. She further noted that Amberwood had announced, in argument before the Land Court, that a restrictive

covenant would be in place upon the two-acre parcel when conveyed and that it would remain essentially untouched, as open space not susceptible to development.[8] The judge essentially ruled that application of the by-law provision in this case was not necessary to effect its purposes.

2. *Discussion.* General Laws c. 240, § 14A,[9] applies only to the Land Court, and provides for declaratory relief without an existing controversy. See *Hansen & Donahue, Inc.* v. *Norwood,* 61 Mass. App. Ct. 292, 293 (2004). The Land Court has exclusive jurisdiction in such cases, G. L. c. 185, § 1($j^{1/2}$), and it has become common for zoning appeals pursuant to G. L. c. 40A, § 17, especially from denial of variance requests, to be accompanied by a count under G. L. c. 240, § 14A, concerning the validity or invalidity of a zoning restriction applicable to a specific lot or use. The Land Court is considered a particular court of competence in such matters. See *Harrison* v. *Braintree,* 355 Mass. 651, 654 (1969). See also *Kindercare Learning Centers, Inc.* v. *Westford,* 62 Mass. App. Ct. 924 (2004).

"The primary purpose of proceedings under § 14A is to

[8]The town challenges reliance by the judge upon such a covenant, asserting that it had never been presented in the proceedings before the local government. We need not further consider the judge's reference, or the town's concern, in view of our disposition of this case.

[9]General Laws c. 240, § 14A, as amended through St. 1977, c. 829, § 14, provides, in relevant part:

> "The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition . . . . The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."

determine how and with what rights and limitations the land of the person seeking an adjudication may be used under the provisions of a zoning enactment in terms applicable to it, particularly where there is no controversy and hence no basis for other declaratory relief." *Hansen & Donahue, Inc.* v. *Norwood*, 61 Mass. App. Ct. at 295, quoting from *Harrison* v. *Braintree*, 355 Mass. at 654. Section 14A is to be broadly construed, *Hansen & Donahue, supra*, although the burden is on the landowner to prove that the zoning regulation is unreasonable as applied to its property. See *Kaplan* v. *Boston*, 330 Mass. 381, 384 (1953). While the availability of the remedy is not restricted to situations in which the purchase and sale of the locus is pending, in *Whitinsville Retirement Soc., Inc.* v. *Northbridge*, 394 Mass. 757, 763 (1985), the court explained that "[t]he evil to be remedied" by G. L. c. 240, § 14A, is "a situation where someone may be forced to invest in land and then subsequently find[s] out there are restrictions." See *Clark & Clark Hotel Corp.* v. *Building Inspector of Falmouth*, 20 Mass. App. Ct. 206, 210 (1985).[10]

The town argues that for a by-law provision to be found invalid as applied, the court must find *both* a failure to promote the purposes of the by-law and significant injury to the property owner, and that neither alone warrants a determination of invalidity. The town then asserts that the judge did not find injury to the landowner, that the landowner made no effort to show any injury, and that none is evident from the record. The landowner argues that (a) the judge's decision is consistent with public policy because parcel C-2 will remain open space and undeveloped; (b) there is no second branch to the analysis, that is, injury to the property owner; and (c) the plaintiff intends to covenant in perpetuity, nevertheless, to prevent further development of parcel C-2.

We conclude that there is, essentially, a second branch to the

---

[10]As to application of the statute, the court in *Harrison* v. *Braintree*, 355 Mass. at 654-655, said, "We deem appropriate a broad construction of c. 240, § 14A. With court dockets greatly overloaded, access to particular courts of competence in the general field should not be restricted on narrow grounds and the need for attention to nonsubstantive issues should be minimized." As such, we pay particular attention and accord special deference to the Land Court judge in these cases.

analysis, and we are persuaded by the town's argument. Although the cases have not explicitly articulated a second branch "as such," in *Barney & Carey Co.* the court ruled that "[w]here the application of the by-law . . . has no real or substantial relation to the public safety, public health or public welfare but *would amount to an arbitrary, unreasonable, and oppressive deprivation of the owner's interest in his private property,* then that application of the regulation has been struck down" (emphasis added). *Barney & Carey Co.* v. *Milton,* 324 Mass. at 445. The emphasized language requires that Amberwood show significant injury to its interest in the locus, i.e., that the prohibition against conveying out parcel C-2 is arbitrary, unreasonable, and oppressive. See *Opinion of the Justices,* 333 Mass. 773, 781 (1955). The judge did not so find, and the record would not, in any event, support such a finding.

In contrast, the "substantiality" of the injury claimed by the landowner was determined to be significant in the following cases. In *Barney & Carey Co.* v. *Milton, supra* at 445-447, the land was zoned only for residential purposes but was not readily usable for dwellings. It was located some distance from any other dwelling, and bounded by the Neponset River, extensive marshes, and a highway beyond which there were further extensive marshes. *Id.* at 441, 445. After meticulous review of the facts, the court effectively noted that use of the land for the zoned residential purposes was a practical impossibility. "In *Barney & Carey Co.* . . . . there was, practically speaking, no use left for the locus when zoned for residences and not for business." *Lexington* v. *Simeone,* 334 Mass. 127, 131 (1956).

In *Pittsfield* v. *Oleksak,* 313 Mass. at 554-555, the ordinance prevented the maintenance and use of a portable saw mill, which effectively rendered useless one hundred acres of timberland, with resulting negative consequences to both public and private interests. The court concluded that application of the ordinance "would permanently deprive the defendant, and therefore the community, of a valuable and otherwise wasting asset" and held that the ordinance was invalid as applied. *Id.* at 555.

The residentially zoned land in *Nectow* v. *Cambridge,* 277 U.S. 183, 186 (1928), was surrounded by industrial and railroad uses. The United States Supreme Court noted that "no practical use [could] be made of the land in question for residential

purposes," *id.* at 187, and concluded that "the invasion of the property . . . was serious and highly injurious." *Id.* at 189.

We also consider it relevant that Amberwood *elected* to create the locus by taking advantage of the frontage exception that it now seeks to have partially invalidated. We respect, but do not find compelling as matter of law, the judge's observation that the owner, when earlier creating the subdivision, could have accomplished what he now seeks, i.e., a 6.1 acre lot to the exclusion of the land represented as parcel C-2 from that lot.[11,12]

Amberwood, in its application to the board, identified the purpose of the conveyance as to "provide buffering for the [Sanidas house lot]." Its application also noted that "[n]o new lots will be or can be created by the conveyance." However, Amberwood can accomplish these purposes within the status quo, and without the invalidation of the by-law provision as applied. For example, the buffering and prohibition of development can be created by the conveyance of an easement to the owner of the Sanidas house lot over parcel C-2, with rights to exclusive occupation, reserving no rights (other than the underlying fee ownership) to the owner of the locus.[13]

The ability to convey one's land is a recognized property interest, *United States* v. *General Motors Corp.*, 323 U.S. 373, 378 (1945), and application of the by-law is some impediment to that property right. However, numerous statutes and regula-

---

[11]We are not unmindful that laches is inapplicable to an as-applied challenge, see *Barney & Carey Co.* v. *Milton*, 324 Mass. at 444, but this is not a situation where a landowner has acquiesced in a direct invasion of its rights, "a usurpation of power which violates rights protected by constitutional provisions." *Id.* at 445.

[12]In the design of subdivisions, and in other regulated land matters, the fact that initially different designs and choices were possible does not furnish reason for retroactive design to obviate those earlier choices that have proved to be less desirable. For example, strict time limits within the statutory scheme of the subdivision control law are designed to provide record certainty. See *Craig* v. *Planning Board of Haverhill*, 64 Mass. App. Ct. 677, 679 (2005); G. L. c. 41, § 81U. Compare *Martin* v. *Board of Appeals of Yarmouth*, 20 Mass. App. Ct. 972 (1985); *Maurice Callahan & Sons, Inc.* v. *Board of Appeals of Lenox*, 30 Mass. App. Ct. 36, 40 (1991); *Perez* v. *Board of Appeals of Norwood*, 54 Mass. App. Ct. 139 (2002) (self-inflicted hardship does not ordinarily constitute "substantial" hardship under G. L. c. 40A, § 10).

[13]The zoning application stated that the applicant owns both the locus and the abutting residential lot (the Sanidas house lot).

tions restrict private property rights. Here, the impediment is minimal compared with the circumstances of those cases where courts have invalidated the application of zoning regulations. See *Nectow* v. *Cambridge*, 277 U.S. at 189; *Pittsfield* v. *Oleksak*, 313 Mass. at 555; *Barney & Carey Co.* v. *Milton*, 324 Mass. at 445.

Additionally, the relief allowed by the judge below undermines the uniform application of otherwise valid local zoning. See G. L. c. 40A, § 4, inserted by St. 1975, c. 808, § 3 ("Any zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structures or uses permitted"); *Everpure Ice Mfg. Co.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, 439 (1949) ("A zoning ordinance is intended to apply uniformly to all property located in a particular district . . . and the properties of all the owners in that district [must be] subjected to the same restrictions for the common benefit of all"); *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 107 (1984) ("[t]he uniformity requirement is based upon principles of equal treatment: all land in similar circumstances should be treated alike"); *KCI Mgmt., Inc.* v. *Board of Appeal of Boston*, 54 Mass. App. Ct. 254, 258 (2002), quoting from *Lopes* v. *Peabody*, 417 Mass. 299, 303 (1994) (courts should avoid "a crazy-quilt pattern of the enforceability of a zoning law intended to have uniform applicability"). Many, if not all applications of zoning regulations could be arguably characterized as unnecessary in any particular case. Numerous arguments of that nature are made by citizens to building inspectors and local zoning authorities every year.

The important and difficult balance between the public interest in the integrity of the local land law, with requirements for uniform application of zoning, compared with the relatively minimal restriction upon the landowner's property rights in the circumstances of this case, does not weigh in favor of determining the frontage exception invalid as applied to the locus. Our conclusion derives additional support here because the owner's goal can be accomplished without such invalidation.

That portion of the judgment declaring the frontage exception provision in the zoning by-law invalid as applied is vacated, and

a new judgment shall enter declaring that provision of the by-law valid as applied. The remainder of the judgment is affirmed.

*So ordered.*