FRANK J. CASTELLI & another[1] vs. BOARD OF
SELECTMEN OF SEEKONK & another.[2]

Bristol.  March 14, 1983. — April 29, 1983.

Present: GRANT, CUTTER, & KASS, JJ.

*Permit. Municipal Corporations,* By-laws and ordinances. *Zoning,* Exhaustion of administrative remedies, Judicial review.

In a proceeding to compel a town's building inspector to revoke a stop work order affecting renovations to the plaintiff's store, brought in the Superior Court without a prior appeal from the stop order to the board of appeals, the judge's determination, which was supported by the evidence, that the stop work order was invalid because it did not represent the building inspector's independent judgment in good faith and that the stop work order should be withdrawn, was within the general grant of jurisdiction to the Superior Court provided by G. L. c. 40A, § 7; however, so much of the judgment that allowed the property owner to proceed with his renovations in accordance with the building permit was reversed and the case was remanded to the Superior Court with further action withheld temporarily to permit the initiation of appropriate enforcement action under the local zoning by-law. [714-717]

CIVIL ACTION commenced in the Superior Court Department on August 15, 1980.

The case was heard by *Mone, J.*

*Max Volterra,* Town Counsel, for the defendants.
*Frederic J. Torphy* for the plaintiffs.

CUTTER, J.  Castelli owned an ice cream store in Seekonk in a zone then designated for highway business by the town's zoning by-law (the by-law), § 7.1 (1979).  The store

---

[1] George Karousos, lessee of the locus.  Mrs. Castelli testified (and it was also agreed) that she and her husband owned the store premises in 1980.

[2] The building inspector of Seekonk.

stands on 1.75 acres of land and is a wooden frame building erected in 1964, prior to the adoption of the by-law. It is a nonconforming structure because it has a front yard setback of only about twenty-two feet which is less than the seventy-foot setback (front yard) requirement of the by-law (§ 7.4) in effect in March, 1980. Castelli operated an ice cream and restaurant business on the premises from 1966 to January, 1980, when Karousos leased the store with the intention of continuing the same business.

In March, 1980, Castelli obtained (with full knowledge of the by-law on the part of the building inspector, see note 2, *supra*) a building permit to do renovations to the store, including remodeling the interior, placing new siding on the exterior, substituting or adding new windows, and installing new wiring. On March 23, 1980, a fire caused damage to part of the roof and rear of the building. There was no damage to the walls, structural supports, front and middle portion of the building, plumbing, or foundation. Castelli applied to the building inspector for a permit to continue the renovations started earlier and to repair the fire damage. No change in the area covered by the store was proposed. The estimated cost of the work (about $9,000) was less than the sum which, under the by-law, § 2, would cause the work to constitute a "substantial improvement" for at least some purposes of the by-law possibly applicable to this case by analogy. As to nonconforming uses generally, see G. L. c. 40A, § 6, as revised by St. 1975, c. 808, § 3.

The building inspector, after inspecting the building, determined that the proposed work constituted renovation and repair (because of the fire) and was not a reconstruction of the building. A permit allowing the work to be continued was issued on April 17, 1980.

From April 17 until May 15, 1980, work proceeded and funds were expended. The building inspector visited the store several times during this period and determined that the work was proceeding in accordance with the permit.

The defendant Del Rosso, chairman of the selectmen, on May 14, 1980, caused the town health agent to go to the

building inspector's house (when the latter was sick in bed) to order him to sign a stop work order with respect to the renovation of the store. Motta testified (at trial in the Superior Court) that "he couldn't say that . . . [he] agreed" with the order but signed it because Del Rosso directed him to do so and not because of anything he personally found to be wrong with the job. He expressed the opinion that the store was not being "reconstructed" and that the work being done was "renovation and repairs." He was aware that the style of the roof was being changed, that solid glass windows were to replace dilapidated jalousie windows on the porch, that siding on the outer walls was to be redone, and that the porch area was to be substantially enclosed. The building was to be brought into conformity with the then current building code and insulation was to be installed in walls in order to save energy.

The plaintiffs did not appeal from the stop order to the town zoning board of appeals. See G. L. c. 40A, § 8, and the by-law, § 14.21. Castelli, upon receipt of the stop order on May 15, 1980, ceased to proceed with the work. The plaintiffs then instituted this proceeding in the Superior Court seeking revocation of the stop order and injunctive relief against any order to Castelli to remove the store.

A Superior Court judge on April 1, 1981, made findings of essentially the facts outlined above. He pointed out that, when the stop order was issued, the selectmen as a group had adopted no vote that Castelli was in violation of the by-law. Indeed a letter of May 15, 1980, from Del Rosso to Castelli stated that the selectmen had not yet reviewed the order with the building inspector because of the latter's illness. In reliance on *Ouellette* v. *Building Inspector of Quincy*, 362 Mass. 272, 276-278 (1972), the trial judge ruled that an action in the Superior Court "lay to review whether the stop work order [of May 15, 1980] was valid." The building inspector's testimony before the judge justified him in finding that the order revoking Castelli's permit was issued, "not on the basis of non-compliance with zoning requirements but rather on account of improper interference

with . . . [the building inspector's] duties by other . . . [town] officials." See the *Ouellette* case, at 276. The building inspector admitted, as the judge found, "that he considered . . . [Castelli] not to be in violation of the by-law." [3]

The *Ouellette* case (at 276-278) appears to recognize that a landowner is entitled to an honest, uninfluenced opinion rendered in good faith by a town official charged with deciding whether, under a by-law, a building or comparable permit shall issue. Such an official, like the building inspector in this case, is under a "duty to act in a fair, judicial, and reasonable manner upon the evidence . . . presented . . . keeping in mind the objects of the by-law." He cannot with propriety "act in an unreasonable, arbitrary, whimsical, or capricious manner." See *Butler* v. *East Bridgewater*, 330 Mass. 33, 38 (1953). The permit granting authority has an obligation "to pass upon . . . [applications for a permit] in each instance under the serious sense of responsibility imposed upon" it. *Id.* at 37. See also *Board of Health of Woburn* v. *Sousa*, 338 Mass. 547, 552 (1959); *McDonald's Corp.* v. *Selectmen of Randolph*, 9 Mass. App. Ct. 830, 832 (1980); 4 Rathkopf, Zoning and Planning §§ 49.04-49.05, 49.09 (4th ed. as amended to 1983).

The trial judge in the present case, on the evidence, reasonably concluded that the building inspector had not afforded Castelli the independent judgment in good faith to which he was entitled and that the permit revocation was

---

[3] At this stage of this proceeding, for reasons stated below, we need not determine whether the building inspector was correct in his determination that Castelli was in compliance with the by-law, although there is strong indication in *Berliner* v. *Feldman*, 363 Mass. 767, 773-775 (1973), that the building inspector justifiably treated the proposed renovation as permissible under the by-law. Compare *Strazzulla* v. *Building Inspector of Wellesley*, 357 Mass. 694, 697 (1970). Certainly no part of the store's renovation appears to have had any relevance to its only nonconforming aspect, viz. its inadequate setback under the by-law. The photographic exhibits strongly suggest that the renovated building, if completed, will be a more sightly (and probably a safer) building than its predecessor.

invalid under the *Ouellette* case, 362 Mass. at 276.[4] The
evidence justified the judge in (a) determining that the
building inspector, by his testimony, had repudiated the
stop order or had shown it not to have been his independent
action or prompted by any zoning considerations, and (b)
vacating the stop order and treating it as a nullity.

The *Ouellette* case, 362 Mass. 272, *supra,* was decided
under G. L. c. 40A, as that chapter existed prior to the com-
prehensive changes effected by St. 1975, c. 808, § 3. The
revised provisions of § 7 were discussed by this court in
*Neuhaus* v. *Building Inspector of Marlborough,* 11 Mass.
App. Ct. 230 (1981), decided only about two months before
the trial judge decided the present case. In the *Neuhaus*
case (at 231), it was said that "the provisions of the present
G. L. c. 40A . . . require that all questions concerning the
*enforcement* of valid zoning . . . by-laws be determined at
the local administrative level before resort may be had to a
court for *enforcement*" (emphasis supplied). In that case,
neighbors of a landowner holding a building permit were
seeking to require the Marlborough building inspector to re-
voke a building permit which the neighbors felt had been is-
sued in violation of the zoning by-law. This court ruled (at
235) that the provisions of the second sentence of the second
paragraph of the revised c. 40A, § 7,[5] specifically pre-
cluded such court enforcement action.

---

[4] The zoning by-law provided (§ 15.1) that the "by-law shall be en-
forced by the . . . [s]electmen through the [i]nspector of [b]uildings" who
"shall approve no application . . . or permit . . . except *in conformity
with this by-law*" (emphasis supplied). We need not decide whether the
by-law provision is inconsistent with the first sentence of G. L. c. 40A,
§ 7, as appearing in St. 1975, c. 808, § 3, which charges the building in-
spector, if there is one, with zoning by-law enforcement, rather than the
selectmen, for here the trial judge found (as already stated) that the select-
men as a group never acted upon the revocation of Castelli's permit.

[5] The sentence reads in part: "No action [or] suit . . . shall be main-
tained in any court . . . to compel the . . . alteration . . . of any structure
or part of a structure . . . by reason of any violation of any zoning by-
law . . . except in accordance with the provisions of this section, section
eight and section seventeen," subject to a proviso which need not be

The determination that the stop work order affecting Castelli's building permit was invalid (essentially because it did not represent the building inspector's independent judgment in good faith) and that the stop work order should be withdrawn was within the general grant of jurisdiction to the Superior Court contained in the last sentence of the present § 7 (see note 5, *supra*). It does not appear to have been judicial *enforcement* action of a type specifically forbidden by the second sentence of the second paragraph of § 7 (see note 5, *supra*). The trial judge, after holding the stop order invalid, however, proceeded to order that Castelli "be allowed to proceed with the . . . renovations in accordance with the building permit." This part of the judge's decision could interfere with proper enforcement action which, under the revised G. L. c. 40A, ought to be passed upon at the local administrative level before resort to a court. See the discussion of the general purpose of the revised c. 40A in the *Neuhaus* case, at 231-235. See *McDonald's Corp.* v. *Seekonk*, 12 Mass. App. Ct. 351, 352-353 (1981).

So much of the judgment as vacates the stop work order (thus determining that the stop order was wholly ineffective) and dismisses the counts or prayers seeking damages is affirmed. The balance of the judgment is reversed and the case is remanded to the Superior Court. There further action is to be withheld until May 25, 1983, to permit the initiation of any appropriate enforcement action under the by-law. Until that date, Castelli is not to proceed with further work under his building permit. From decisions by local officials involved in any enforcement action which may take place, timely appeals to the town's zoning board of appeals may be prosecuted, and judicial review of any enforcement decisions by that board may be sought. On

quoted.

The final sentence of the revised § 7 reads: "The superior court shall have jurisdiction to enforce the provisions of this chapter, and any . . . by-laws adopted thereunder, and may restrain by injunction violations thereof."

and after May 25, 1983, further action consistent with this opinion may be taken in the Superior Court and Castelli may proceed with the work of renovation under his present permit if it has not then been revoked or otherwise affected by valid action of appropriate town officers.

*So ordered.*