BANQUER REALTY CO., INC., & others[1] vs. ACTING BUILDING
COMMISSIONER OF BOSTON & others.[2]

Suffolk. March 10, 1983. — June 22, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Land Court*, Jurisdiction. *Zoning*, Enforcement. *Boston*. *Administrative Law*, Exhaustion of remedies, Primary jurisdiction.

The Land Court had jurisdiction under G. L. c. 240, § 14A, to entertain a
    claim which sought a determination of the extent to which certain
    items of the Boston Zoning Code affected a landowner's proposed use
    of its property. [569-571]
A landowner's failure to appeal a written decision of the acting building
    commissioner of Boston, revoking its construction permits, to the
    Boston zoning board of appeal under St. 1956, c. 665, § 8, did not
    preclude the Land Court from entertaining the landowner's action,
    pursuant to G. L. c. 240, § 14A, seeking a permanent injunction
    restraining the defendants from interfering with the construction,
    where language in § 14A indicated that the doctrine of exhaustion of
    administrative remedies was not a bar to such an action. [571-575]
In an action in the Land Court, pursuant to G. L. c. 240, § 14A, seeking a
    permanent injunction restraining city officials from interfering with a
    landowner's construction of a concrete batching plant, the judge's
    findings, on the issue whether the proposed plant was a use as a matter
    of right under the Boston Zoning Code, that the noise level would be
    compatible with that allowed and that the dust generated would be
    confined to the locus, were not clearly erroneous. [575-576]

CIVIL ACTION commenced in the Land Court Department
on April 22, 1981.

The case was heard by *Randall*, J.

---

[1] The other plaintiffs are Herman Banquer, Paul B. Morley, and Lawrence Ready-Mix Concrete Corp.

[2] The other defendants are Anthony A. Pepicelli, individually, Philip L. Chapski, individually and as supervising structural engineer of Boston, and the city of Boston.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*William J. Smith,* Assistant Corporation Counsel, for the defendants.

*William E. Ryckman, Jr.* (*Harold Meizler* with him) for the plaintiffs.

HENNESSEY, C.J. On March 27, 1981, three permits were issued to the plaintiffs for the construction of a concrete batching plant and appurtenant buildings on certain property in Dorchester. On April 8, 1981, the defendant, the acting building commissioner of Boston, issued a letter to the plaintiffs ordering them to cease construction and informing them that the permit for the concrete batching plant had been issued in error. On April 14, 1981, the acting commissioner informed the plaintiffs that their permits were revoked. The permits were initially issued on the ground that the plaintiffs' proposed concrete batching plant was a use as "a matter of right" under Use Items 68 or 69 of the Boston Zoning Code. The acting commissioner, however, subsequently determined that the plaintiffs' concrete batching plant was a conditional use under Use Item 70, which requires application to the board of appeals for a special permit.[3]

On April 22, 1981, the plaintiffs brought this action in the Land Court, pursuant to G. L. c. 240, § 14A, and G. L. c. 185, § 1 (j ½), seeking a permanent injunction restraining the defendants from interfering with the plaintiffs' construction and operation of the concrete batching plant and appurtenant buildings, and an order requiring the defendants to issue building permits and certificates of occupancy to the plaintiffs for construction and operation of the concrete batching plant. The plaintiffs also sought damages and attorneys' fees. On April 23, 1981, the judge issued a preliminary injunction restraining the defendants from

---

[3] See discussion, *infra,* of the differences between uses under Use Items 68, 69, and 70.

interfering with the construction of the plaintiffs' concrete batching plant. During a trial on the merits, seven witnesses testified, twenty-six exhibits were introduced, and the judge, in the presence of counsel, took a view of a similar concrete batching plant owned by plaintiff Lawrence Ready-Mix Concrete Corp. After trial, the judge determined that the permits were correctly issued and that the subsequent revocation of those permits was in error and void. We transferred the case to this court on our own motion.

On this appeal, the defendants make three challenges to the judge's determination. First, they contend that the Land Court was without jurisdiction under G. L. c. 240, § 14A, and G. L. c. 185, § 1 (j ½), to entertain the plaintiffs' claim because the plaintiffs are not challenging the validity of the zoning code but only questioning the correctness of the acting building commissioner's interpretation of its provisions. The defendants also contend that the Land Court was without jurisdiction because the plaintiffs did not exhaust their administrative remedies under St. 1956, c. 665, § 12. Finally, the defendants urge that, if the Land Court had jurisdiction, the findings of the judge are clearly erroneous. We disagree with all the defendants' contentions. Accordingly, we affirm the judgment of the Land Court.

The judge found the following facts. The plaintiff Lawrence Ready-Mix Concrete Corp. (Lawrence Ready-Mix) entered into an agreement with the plaintiff Banquer Realty Co., Inc. (Banquer Realty), to lease Banquer Realty's land at 55 Enterprise Street, Dorchester, for the purpose of erecting a concrete batching plant. Pursuant to that agreement, the plaintiff Herman Banquer, acting as authorized agent for Banquer Realty and for the benefit of Lawrence Ready-Mix, and the plaintiff Paul B. Morley, acting as agent for and as general counsel to Lawrence Ready-Mix, jointly applied to the city of Boston building department for a building permit to construct the plant. On February 5, 1981, the application was approved by David Wessling,

assistant zoning administrator. On February 13, 1981, however, a letter bearing the name of the acting building commissioner was sent to the plaintiffs informing them that no permit would issue until approvals had been obtained from the Department of Environmental Quality Engineering, the Boston air pollution control commissioner, the Boston public works department, and the water and sewer commissioner. All these approvals were obtained.

On March 10, 1981, the plaintiff Herman Banquer filed applications for permits to erect a building to be used as offices and lavatories for the plant, and a storage silo. Approvals were obtained from the various agencies previously described. On March 27, 1981, the permits for the concrete batching plant and appurtenant buildings were issued. On April 3, 1981, plaintiff Lawrence Ready-Mix signed a contract with Schiavone Construction Co. to supply and deliver to Schiavone concrete to be used in the construction of an extension of the Massachusetts Bay Transportation Authority system.

On April 8, 1981, the acting commissioner issued a letter to the plaintiffs informing them that the previous issuance of the permits was in error and ordering them to stop all construction at the site. The acting commissioner testified that the order was issued in response to letters from community organizations and others protesting the issuance of the permits. The judge, however, questioned the validity of the acting commissioner's reasons because the acting commissioner's letter was issued on the same date that six of the eight letters were received. One other letter was received on the day after and another the day before the acting commissioner's letter was dated.

On April 14, 1981, the acting commissioner issued a memorandum indicating that all applications for concrete batching plants and appurtenant structures would be processed under Use Item No. 70 of the Boston Zoning Code. The testimony of a zoning administrator revealed that before this memorandum was issued, concrete batching plants were not considered to fall within Use Item No. 70.

On April 14, 1981, the acting commissioner also sent a letter to the plaintiffs declaring that the building permits were revoked because they had been issued in error.

The plaintiffs' property is located in a "General Industrial" district. All industrial uses described or listed in Use Items 68 and 69 are allowed as a matter of right in such districts. Uses described in Use Item 70 are allowed in a "General Industrial" district only on a conditional basis — approval from the board of appeals is a necessary prerequisite to issuance of a permit.

The proposed site is in the heart of an industrial area. There is not a residential district within 250 feet of the site. The abutters of the plaintiffs' property are businesses which have heavy traffic flow during the day. Until 1978, the Boston Sand & Gravel Company operated a concrete batching plant on property adjacent to the plaintiffs' proposed site.

1. The defendants argue that the Land Court does not have jurisdiction under G. L. c. 240, § 14A,[4] and G. L.

---

[4] General Laws c. 240, § 14A, as amended by St. 1975, c. 808, § 5, provides:

"The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition. The right to file and prosecute such a petition shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for, nor by the fact that no architects' plans or drawings for such erection, alteration, improvement or repair have been prepared. The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."

c. 185, § 1 (j ½),[5] over the plaintiffs' claim because it involves only an interpretation of the Boston Zoning Code, and not a challenge to the validity of the code. The defendants recognize that G. L. c. 240, § 14A, specifically provides landowners with a cause of action to determine "the *validity of . . .* or . . . the *extent* to which any [zoning] ordinance, by-law or regulation *affects*" a proposed use of their property (emphasis supplied). They contend, however, that this language should be read to allow only suits that challenge the local by-law as facially invalid or invalid in its application to a particular case. Mere "interpretation" cases, the defendants urge, should not fall within the Land Court's jurisdiction. We disagree.

The language of G. L. c. 240, § 14A, clearly grants the Land Court jurisdiction over two kinds of cases, validity and extent cases. The plaintiffs' claim falls in the latter category in that they seek a "determination of the extent to which [Use Items 68, 69, and 70 of the Boston Zoning Code] affect a proposed use" (concrete batching plant) of their property.

As authority for their contention that the Land Court's jurisdiction should be limited to cases that involve challenges to the validity of local laws, the defendants point to the fact that in virtually all of the reported cases under G. L. c. 240, § 14A, validity challenges have been made. We are aware of only one case under G. L. c. 240, § 14A, where the validity of a regulation was not at issue. *Lupo* v. *Stow*, 350 Mass. 722, 773 (1966). There have been, however, several cases where both validity and interpretation issues were presented. See, e.g., *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 226-228 (1972), cert. denied, 409 U.S. 1108 (1973); *Mioduszewski* v. *Saugus*, 337 Mass. 140, 141 (1958); *Pioneer Insulation & Modernizing Corp.* v.

---

[5] General Laws c. 185, § 1, as appearing in St. 1981, c. 658, § 1, provides in relevant part: "The land court . . . shall have exclusive original jurisdiction of the following matters: . . . . (j ½) Complaints under section fourteen A of chapter two hundred and forty to determine the validity and extent of municipal zoning ordinances, by-laws and regulations."

*Lynn,* 331 Mass. 560, 562 (1954). See also *Twomey* v. *Board of Appeals of Medford,* 7 Mass. App. Ct. 770, 771 (1979). Furthermore, nothing in any of the cases decided under G. L. c. 240, § 14A, persuades us to disregard the unambiguous language of G. L. c. 240, § 14A, which allows landowners to bring two different causes of action. It appears that the lack of "interpretation" cases is fortuitous and not the result of any judicial or legislative judgment that the Land Court lacks jurisdiction over such claims.

2. The defendants next contend that even if the Land Court has jurisdiction over the plaintiffs' claim, that claim, nevertheless, should have been dismissed because the plaintiffs did not exhaust their administrative remedies. The defendants submit that the plaintiffs should have appealed the written decision of the acting building commissioner revoking their permits to the Boston zoning board of appeal under St. 1956, c. 665, § 8.[6] Section 8, as amended by St. 1973,

---

[6] Both the plaintiffs and the defendants submit that St. 1956, c. 665, and not G. L. c. 40A, is the zoning act which applies to Boston. It is clear that prior to 1975, the city of Boston was specifically excluded from the coverage of G. L. c. 40A, the general zoning act. See G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1. In 1975, however, G. L. c. 40A was comprehensively revised by St. 1975, c. 808, § 3. Although preliminary drafts of c. 808 had contained the express exclusion of Boston, see, e.g., 1975 House Doc. No. 5600, § 3, the exclusion was absent from c. 808 as enacted.

Nevertheless, all parties to this case submit that c. 40A still does not apply to Boston. The plaintiffs point out that prior to 1975, c. 40A was an "enabling act" and, under G. L. c. 40A, § 2, the city of Boston was specifically excluded from its operation because the city was independently "enabled" to exercise zoning powers by virtue of a special act. St. 1956, § 665. They assert that when c. 40A was amended by St. 1975, c. 808, there was concern that it was no longer necessary to treat the statute as an enabling act because of the Home Rule Amendment, art. 89 of the Articles of Amendment to the Constitution of the Commonwealth, and that treating c. 40A as an enabling act might limit the home rule powers of the cities and towns. Thus, according to the plaintiffs, the Legislature specifically provided in § 2A of c. 808, that the act was intended to facilitate the adoption of zoning ordinances and by-laws "in accordance with the provisions of Article 89 . . . ." The plaintiffs urge that this reference to art. 89 indicates that the city of Boston was intended to be excluded from the operation of c. 40A, because § 9 of art. 89 provides: "Ex-

c. 296, § 4, provides in relevant part that "any person aggrieved by reason of . . . any order or decision of the building commissioner . . . may appeal to [the] board of appeal within forty-five days after such refusal, order or decision . . . ." Since the plaintiffs are clearly "person[s] aggrieved" within the meaning of this provision, they had a right to appeal the acting building commissioner's revocation of their permits to the board of appeal. The defendants assert further, however, that the plaintiffs should not be allowed to bring this action in the Land Court because they did not appeal to the board of appeal. We disagree.

It is a general rule that "[i]n the absence of a statutory directive to the contrary, the administrative remedies should be exhausted before resort to the courts." *Gordon* v. *Hardware Mut. Casualty Co.,* 361 Mass. 582, 587 (1972), and cases cited. In this case, however, G. L. c. 240, § 14A, contains language which indicates that exhaustion of administrative remedies is not required. It provides: "The right to file and prosecute . . . a petition [under this section] shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for . . . ." Thus, the

---

isting special laws. — All special laws relating to individual cities or towns shall remain in effect and have the force of an existing city or town charter . . . ."

The defendants do not brief the issue on this appeal. In the proceeding in the Land Court, however, they contended that c. 40A, as amended by St. 1975, c. 808, does not apply to the city of Boston because the enactment of a general statute does not by implication repeal a preexisting special statute, citing, inter alia, *South Shore Nat'l Bank* v. *Board of Bank Incorporation,* 351 Mass. 363, 370-371 (1966); *Brown* v. *Lowell,* 8 Met. 172, 174-175 (1844). The defendants urge us not to decide the issue in this case because they did not brief or argue it and because the issue is an important one in that there are a number of significant differences between St. 1956, c. 665, and G. L. c. 40A. For example, compare St. 1956, c. 665, §§ 1, 2, with G. L. c. 40A, § 5; St. 1956, c. 665, § 11, as amended by St. 1974, c. 669, § 1, with G. L. c. 40A, § 17; and St. 1956, c. 665, § 9, with G. L. c. 40A, § 10. Since we conclude, *infra,* that exhaustion of administrative remedies would not be required in this case regardless of whether St. 1956, c. 665, or G. L. c. 40A, is the applicable zoning statute, we need not resolve this issue.

Legislature has established clearly that the doctrine of primary jurisdiction is not applicable to claims brought under G. L. c. 240, § 14A. An issue of primary jurisdiction arises in situations "where a plaintiff, in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy." *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 220 (1979). Although this case involves an issue of exhaustion of administrative remedies rather than an issue of primary jurisdiction, "the rationale underlying primary jurisdiction is in substance much the same as that which supports exhaustion. The doctrine of primary jurisdiction, like exhaustion, 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Murphy* v. *Administrator of the Div. of Personnel Admin.*, *supra* at 221, quoting *United States* v. *Western Pac. R.R.*, 352 U.S. 59, 63 (1956). In the case of G. L. c. 240, § 14A, the Legislature has determined that resort to local zoning procedures is not a necessary prerequisite to obtaining judicial relief. We perceive no reason why the availability of the same judicial relief should be precluded once a plaintiff has applied for a permit but has been denied.

The defendants contend that our decision in *Church* v. *Building Inspector of Natick*, 343 Mass. 266 (1961), requires a conclusion that the plaintiffs' claim should be dismissed because they did not exhaust their administrative remedies. In *Church*, we held that the remedy of mandamus was not available to compel a building inspector to issue a building permit where Church had applied for and had been denied a building permit but had not appealed the denial to the local zoning board of appeals. *Id.* at 267-268. Cf. *Goldman* v. *Planning Bd. of Burlington*, 347 Mass. 320, 325-326 (1964) (action for declaratory relief brought by landowner against building inspector for revocation of certain building permits should be dismissed because plaintiff had not appealed building inspector's revocation of permits to local board of appeals). In neither of these cases, however, was

there statutory language indicating that the Legislature did not intend exhaustion to be a requirement. Specifically, neither of these cases involved an action under G. L. c. 240, § 14A.

The defendants also rely on *Neuhaus* v. *Building Inspector of Marlborough,* 11 Mass. App. Ct. 230 (1981), and *McDonald's Corp.* v. *Seekonk,* 12 Mass. App. Ct. 351 (1981), as supporting an exhaustion requirement in this case. In these cases, the Appeals Court interpreted the general zoning statute, G. L. c. 40A, as requiring exhaustion of administrative remedies in the circumstances of those cases. The defendants state that G. L. c. 40A does not apply in Boston. Nevertheless, they contend that the reasoning in *Neuhaus* and *McDonald's* supports the defendants' contention that exhaustion is required in the case at bar. We need not resolve whether G. L. c. 40A applies in Boston because even if it were held to apply in Boston, the exhaustion doctrine would not be applicable in this case.[7]

In both *Neuhaus* and *McDonald's,* the Appeals Court was interpreting and applying G. L. c. 40A, § 7, as appearing in St. 1975, c. 808, § 3, which provides: "No action, suit or proceeding shall be maintained in any court, nor any administrative or other action taken to recover a fine or damages or to compel the removal, alteration, or relocation of any structure or part of a structure or alteration of a structure by reason of any violation of any zoning by-law or ordinance except in accordance with the provisions of this section, section eight and section seventeen." Section eight provides for appeals by "[a]ny person aggrieved" to the local zoning boards of appeal. Section 17 provides for judicial appeals from the boards of appeal by "[a]ny person aggrieved." See G. L. c. 40A, § 17, as amended through St. 1982, c. 533, § 1. Section 7 requires exhaustion of the statutory administrative appeal procedures set forth in §§ 8 and 17 in suits brought to compel enforcement of zoning by-laws and ordinances against offending owners. Hence this

---

[7] See note 6, *supra.*

section would not require exhaustion in the case at bar. Thus, after reviewing all the defendants' assertions, we conclude that the doctrine of exhaustion of administrative remedies does not apply in this case, regardless of whether St. 1956, c. 665, or G. L. c. 40A is the applicable zoning statute.

3. The defendants' final assertion is that the findings of the judge are clearly erroneous. See *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160-161 (1977). We disagree.

The issue before the Land Court was whether the plaintiffs' proposed concrete batching plant was a use as a matter of right under Use Item 68 or 69 of the Boston Zoning Code. Uses under Use Item 68 include "[a]ny industrial use other than a use described in Use Item No. 70, which does not result in noise or vibration perceptible without instruments more than fifty feet outside the perimeter of the lot." Uses under Use Item 69 include "[a]ny industrial use other than a use described in Use Item No. 70." Uses under Use Item 70 include "[a]ny use which is objectionable or offensive because of special danger or hazard, or because of cinders, dust, smoke, refuse matter, flashing, fumes, gases, vapor or odor not effectively confined to the lot, or because of noise or vibration perceptible without instruments more than two hundred and fifty feet outside the perimeter of the lot or, if a residential district is within two hundred and fifty feet of the lot, at any point inside such residential district."[8] The parties have stipulated that there is not a residential district within 250 feet of the plaintiffs' proposed site. Hence, the plaintiffs' proposed concrete batching plant is not a use as a matter of right only if (1) "cinders, dust, smoke, refuse matter, flashing, fumes, gases, vapor or odor [are] not effectively confined to the lot" or (2) "because of noise or vibra-

---

[8] Both Use Items 68 and 70 list examples of uses which fall within their provisions. When this controversy arose, neither list contained concrete batching plants. On July 17, 1981, the city of Boston amended the zoning code to require that future permits for concrete batching plants be issued under Use Item 70 (requiring a special permit).

tion perceptible without instruments more than two hundred and fifty feet outside the perimeter of the lot . . . ."

The judge found that the noise level of the plaintiffs' proposed concrete batching plant would be compatible with that allowed under Use Item 68, and that the dust generated by the plant would be confined to the locus. The defendants assert that the judge's findings have no evidentiary support. This contention is without merit. The judge's finding regarding the noise level was based on his consideration of the testimony of witnesses, including one William H. Clark, who has constructed concrete batching plants and who is an operator of the Falmouth plant, and on the judge's first-hand observation of the operation of the Falmouth plant from inside the plant, just outside of it, and fifty feet from what would be the lot line of the locus. The judge's finding with regard to the dust level was based primarily on the testimony of Clark. This evidentiary basis is sufficient to support the judge's findings.

The defendants further urge that the judge's finding with regard to the noise level of the plant is erroneous because, in their view, it is "ludicrous" to conclude that a diesel truck, which would be used to haul the product of the plant to and from the site, could not be heard more than fifty feet away from the site. The judge's finding is not clearly erroneous, however, because he considered, and we think properly, the industrial nature of the area with the many competing and noisy industrial activities that surround the site.[9]

Thus, we conclude that the Land Court properly exercised jurisdiction over the plaintiffs' claim and that the findings of the judge are not clearly erroneous. Accordingly, the judgment is affirmed.

*So ordered.*

---

[9] Furthermore, contrary to the defendants' assertion, the industrial nature of the area was demonstrated adequately by the evidence submitted. A 1976 aerial photograph of the area was introduced. Herman Banquer, who was familiar with the area, testified as to the amount of vehicular traffic which was generated.