CLARK & CLARK HOTEL CORP. & another[1] *vs.* BUILDING
INSPECTOR OF FALMOUTH.

Barnstable. February 12, 1985. — June 13, 1985.

Present: DREBEN, KAPLAN, & WARNER, JJ.

*Administrative Law,* Exhaustion of remedies. *Zoning,* Exhaustion of administrative remedies. *Jurisdiction,* Zoning.

General Laws c. 240, § 14A, and c. 185, § 1 (*j½*), giving the Land Court
exclusive jurisdiction in actions seeking a determination of the extent
to which a zoning by-law affects a particular use of property, do not
preclude a landowner, in appropriate circumstances, from seeking such
a determination in the Superior Court under G. L. c. 231A. [207-209]
Landowners seeking a determination that a local zoning by-law did not
preclude their use of a meeting hall in their motel for certain intermittent
sales were not entitled to bring an action for declaratory relief in the
Superior Court without first exhausting their administrative remedies
under G. L. c. 40A, where there was no showing that any exception to
the doctrine of exhaustion was applicable. [209-214]

CIVIL ACTION commenced in the Superior Court Department
on September 15, 1982. The case was heard by *John F. Moriarty,* J.

*Frank K. Duffy, Jr.,* Town Counsel, for the defendant.

DREBEN, J. The facts present a garden variety zoning dispute
between the owner and the operator of the Sheraton Inn in
Falmouth (plaintiffs) and the zoning enforcement officer (defendant building inspector) of the town. The difficulty arises
because of uncertainty as to the proper forum in light of *Banquer
Realty Co.* v. *Acting Bldg. Commr. of Boston,* 389 Mass. 565
(1983).

The defendant appeals from a judgment declaring that the
plaintiffs' use of the meeting hall in their motel for certain

[1] Clark Inns, Inc.

intermittent sales is not precluded by the town's zoning by-law.[2] The plaintiffs had leased their hall to a company known as AVL, Inc., to conduct a sale of stereo and other equipment during a three-day period beginning September 7, 1982. On September 7, 1982, the defendant went to the motel and ordered AVL to stop its sale, claiming that such use of the facility was in violation of Falmouth's zoning by-law. AVL complied with the order. Eight days later, without resort to the administrative remedies of G. L. c. 40A, the plaintiffs filed their complaint in the Superior Court.

The judge first dismissed the action because the plaintiffs had not exhausted their administrative remedies, but a few days later, relying on *Banquer Realty Co.* v. *Acting Bldg. Commr. of Boston*, 389 Mass. 565 (1983), he revoked his original order and ruled that exhaustion was not required. On the merits, he held that the plaintiffs' activities were not in violation of the by-law.

The issue before us is whether the plaintiffs may sidestep an appeal to the board of appeal (G. L. c. 40A, § 8) and proceed directly in the Superior Court. The defendant, claiming they may not, makes the following two-pronged argument: (1) The Superior Court lacks jurisdiction; if a direct action in court is permissible, it must be brought in the Land Court, as that court has exclusive jurisdiction over such proceedings pursuant to G. L. c. 240, § 14A, and G. L. c. 185, § 1 (*j½*). (2) Even if the Superior Court has jurisdiction of the plaintiffs' claim, the action should be dismissed because the plaintiffs have failed to exhaust their administrative remedies under G. L. c. 40A.

1. *Jurisdiction of the Superior Court.* The defendant asserts that the plaintiffs' action, although not so labeled, is in effect

---

[2] The applicable provision, a 1966 by-law, allowed "such accessory uses as are customarily incidental to any of the above uses," in this case, "hotels," "motels," and "inns." It was stipulated that "[t]he meeting hall (large function room) in other hotels on Cape Cod including the Holiday Inn, Falmouth; Dunfey's, Best Western, Hyannis; and Ramada Inn are used for similar intermittent activity."

brought under G. L. c. 240, § 14A,[3] since it seeks a "determination of the extent to which [the zoning] by-law affects a . . . use" of their premises. Such actions, he claims, must be brought in the Land Court because G. L. c. 185, § 1 (j½), as appearing in St. 1981, c. 658, § 1, provides that that court shall have exclusive original jurisdiction of complaints under G. L. c. 240, § 14A, "to determine the validity and extent of municipal zoning ordinances, by-laws and regulations."

The defendant, however, fails to take into account the teaching of *Woods* v. *Newton*, 349 Mass. 373, 376-377 (1965), which permits owners who are "in dispute with public officials" because of "pending attempts to make use of land" to seek declaratory relief under G. L. c. 231A in the Superior Court instead of going to the Land Court under G. L. c. 240, § 14A. The Supreme Judicial Court specifically stated that this procedure, "alternative to that given by c. 240, § 14A, does not invade the exclusive jurisdiction of the Land Court of proceedings under that statute." *Id.* at 377. This court, too, recently referred to the alternate approach available in the Superior Court where, as here, an actual controversy exists. *Mastriani* v.

---

[3] General Laws, c. 240, § 14A, as amended through St. 1977, c. 829, § 14, provides: "The owner of a freehold estate in possession in land may bring a petition in the land court against a city or town wherein such land is situated, which shall not be open to objection on the ground that a mere judgment, order or decree is sought, for determination as to the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of chapter forty A or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof, or of present or future structures thereon, including alterations or repairs, or for determination of the extent to which any such municipal ordinance, by-law or regulation affects a proposed use, enjoyment, improvement or development of such land by the erection, alteration or repair of structures thereon or otherwise as set forth in such petition. The right to file and prosecute such a petition shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for, nor by the fact that no architects' plans or drawings for such erection, alteration, improvement or repair have been prepared. The court may make binding determinations of right interpreting such ordinances, by-laws or regulations whether any consequential judgment or relief is or could be claimed or not."

*Building Inspector of Monson*, 19 Mass. App. Ct. 989, 990 (1985). See also *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 207 n.3 (1982).

2. *Exhaustion of administrative remedies.* That the Superior Court has subject matter jurisdiction and may, appropriately, at some stage of the proceedings, hear the matter, does not, however, resolve the question whether the court should defer in the first instance the administrative process.[4]

"In recent years [the Supreme Judicial Court] has frequently emphasized the importance of judicial application of exhaustion principles . . ." *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 220 (1979), and cases cited. The general rule, even where there is an alternate judicial or statutory remedy providing access to the courts, is that, if administrative action "may afford the plaintiffs some relief, or may affect the scope or character of judicial relief, exhaustion of the possibilities [of such administrative action] should ordinarily precede independent action in the courts." *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 752 (1979).[5] *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. 582, 587 (1972). *J. & J. Enterprises, Inc.* v. *Martignetti*, 369 Mass. 535, 540 (1976).

In the zoning area, application of exhaustion principles has been complicated. See generally Ryckman, Judicial and Administrative Review in Massachusetts Zoning and Subdivision

---

[4] This court in applying G. L. c. 40A, § 7, which prohibits the bringing of certain actions except in accordance with the provisions of §§ 7, 8 and 17, has sometimes used the phrase "lack of jurisdiction" or a similar term in requiring exhaustion of administrative remedies. See, e.g. *William C. Bearce Corp.* v. *Building Inspector of Brockton*, 11 Mass. App. Ct. 930, 930-931 (1981); *McDonald's Corp.* v. *Seekonk*, 12 Mass. App. Ct. 351, 353 (1981); *Selectmen of Tewksbury* v. *Granfield*, 17 Mass. App. Ct. 1011 (1984). Where § 7 has no application (and it appears that *Banquer*, 389 Mass. at 574-575, has given the section a limited meaning), the question of exhaustion is a matter of postponement of judicial consideration rather than one of lack of subject matter jurisdiction.

[5] In *Nelson*, where the plaintiffs had asserted common law claims for breach of contract and for fraud, and has also claimed relief under G. L. c. 93A, the court ordered the actions dismissed because the plaintiffs had failed to exhaust their administrative remedies under c. 176B, § 12.

Control Cases, Part 1, 52 Mass. L. Q. 297, esp. at 298 (1967); Part 2, 53 Mass. L. Q. 23 (1968). The complexity is due in part to the inadequacy of the remedies provided by the former c. 40A,[6] see *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 519-520 (1965), and by the existence of a parallel remedy in c. 240, § 14A, which contains, in certain cases, a statutory directive eliminating the exhaustion requirement. *Banquer*, 389 Mass. at 572-573.

Nevertheless, we think the doctrine of exhaustion is alive and well in the zoning area. The recent case of *Whitinsville Retirement Soc., Inc.* v. *Northbridge*, 394 Mass. 757 (1985), bears proof, and, although *Banquer* appears to pull in another direction, we think that *Banquer*, too, supports exhaustion principles.[7]

Although *Banquer* did not require the plaintiffs to follow the administrative route, the court reaffirmed the "general rule" that, "[i]n the absence of a statutory directive to the contrary, the administrative remedies should be exhausted before resort to the courts." *Banquer*, 389 Mass. at 572, quoting from *Gordon* v. *Hardware Mut. Cas. Co.*, 361 Mass. at 587. The court also recognized the validity of *Murphy* v. *Administrator of the Div. of Personnel Admn.*, *supra*, 377 Mass. at 220. It seems that, but for the legislative determination found by the court in c. 240, § 14A, exhaustion principles would have applied.

In the more recent case of *Whitinsville Retirement Soc., Inc.* v. *Northbridge*, 394 Mass. 757 (1985), the court held that the Land Court did not have subject matter jurisdiction under G. L. c. 240, § 14A, to interpret the effect of a special permit so as to allow the plaintiff to sidestep an appeal to the board of appeals. In explaining the purpose of the statute, the court said, "The evil to be remedied" by § 14A, is "a situation where someone may be forced to invest in land and then subsequently

---

[6] These remedies have been improved in the new c. 40A, as appearing in St. 1975, c. 808, § 3. See *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. 471, 481-482 (1984). See also Healy, Massachusetts Zoning Practice Under the Amended Zoning Enabling Act, 64 Mass. L. Rev. 157, 163 (1979).

[7] We note that the question of exhaustion was not raised in the recent case of *Mahoney* v. *Chelsea*, *ante* 91 (1985).

find out that there are restrictions." That provision and G. L. c. 185, § 1 (*j½*) "may not be used to avoid the normal appellate route required in zoning disputes." 394 Mass. at 763.

We now examine *Banquer* more closely. There, plaintiff A had a written agreement with plaintiff B to enter into a lease for the purpose of erecting a concrete batching plant in an industrial zone. Pursuant to the agreement, A and B and others jointly applied for a building permit to construct the plant. The permit was granted[8] and plaintiff A signed a contract to supply and deliver concrete for an extension of the Massachusetts Bay Transportation Authority system. Subsequently, the plaintiffs were informed that the permit had been issued in error and that it was revoked. The plaintiffs were allowed to seek relief under G. L. c. 240, § 14A, without appealing the denial of the permit to the board of appeals as provided in c. 40A.

*Banquer* relied on the following language of § 14A, see note 3, *supra*, to indicate that exhaustion was not required: "The right to file and prosecute . . . a petition [under this section] shall not be affected by the fact that no permit or license to erect structures or to alter, improve or repair existing structures on such land has been applied for . . . ."

The plaintiffs in *Banquer* entered into the lease and the contract to supply concrete in reliance on the action of the building inspector and "subsequently [found] out that there [were or might be] restrictions". *Whitinsville* at 763. They were thus in at least as precarious a position as the investor § 14A was designed to protect. See also *Addison-Wesley Publishing Co.* v. *Reading*, 354 Mass. 181, 185 (1968).

In allowing the direct action, the *Banquer* court stated, "We perceive no reason why the availability of the same judicial relief should be precluded once a plaintiff has applied for a permit but has been denied." 389 Mass. at 573. We do not take that statement to mean that the normal appellate route of c. 40A can be avoided whenever a dispute arises as to "the extent to which" a by-law affects a use. See note 3, *supra*. Rather, in light of *Whitinsville's* injunction that c. 240, § 14A,

---

[8] Permits were also granted to erect appurtenant buildings.

may *not* be used to supplant the usual appellate route, we view *Banquer* as a situation calling for unusual relief. We also note that the acting building inspector there, in revoking the permits, did so for reasons found questionable by the trial judge. *Banquer* at 568. See *Castelli* v. *Selectmen of Seekonk*, 15 Mass. App. Ct. 711, 716 (1983). Thus, we do not construe *Banquer* to mean that every owner denied a building permit by reason of some provision of the zoning law may by-pass the board of appeal and file an action under c. 240, § 14A.

Even if our reading of the scope of *Banquer* is too restrictive, we do not find here, as was found in *Banquer*, a legislative determination that resort to local zoning procedures may be ignored. Exhaustion is the normal rule and exceptions to it are not to be readily invited. "Courts must be careful not to invade the province of an administrative board," *Gordon*, 361 Mass. at 586, quoting from *St. Luke's Hosp.* v. *Labor Relations Commn.*, 320 Mass. 467, 470 (1946), particularly where, as here, the issue is factual, notwithstanding the statement of agreed facts. See *Harvard* v. *Maxant*, 360 Mass. 432, 439 (1971), pointing out that the question whether a particular use is "customarily incidental" to another use is a "factual issue." Indeed, that question is peculiarly apt for local interpretation.

The language of G. L. c. 240, § 14A, relied on in *Banquer* as a "statutory directive" speaks only of building permits and architects' plans, and clearly relates to construction, an area where the Legislature could reasonably determine that a landowner, because of the expense involved, is entitled to the extra measure of security which is provided by initial court approval.[9] No other language was relied on in *Banquer*.

Moreover, this is not an action pursuant to c. 240, § 14A. Although *Woods* v. *Newton*, 349 Mass. 373 (1965), permits an owner

---

[9] If a permit were granted by the building inspector, there would be no occasion for the landowner to appeal. Such landowner would, nevertheless, have reason to be concerned with the possibility of an action being brought within the six-year limitation period provided by the second paragraph of c. 40A, § 7, for "zoning violations committed under color of a building permit." *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. at 482. For this reason, a landowner might well prefer to follow the route of seeking court approval under G. L. c. 240, § 14A, without applying for a permit.

to seek declaratory relief in the Superior Court, such an action is not one under c. 240, § 14A, but is brought under G. L. c. 231A. Thus the statutory directive found by the *Banquer* court in c. 240, § 14A, can, at most, serve only as a model.

*Banquer*, by distinguishing two cases which required exhaustion, suggests that c. 240, § 14A, stands apart. In discussing *Church* v. *Building Inspector of Natick*, 343 Mass. 266 (1961) (mandamus), and *Goldman* v. *Planning Bd. of Burlington*, 347 Mass. 320, 325-326 (1964) (action for declaratory relief in Superior Court), the *Banquer* court said: "In neither of these cases, however, was there statutory language indicating that the Legislature did not intend exhaustion to be a requirement. Specifically, neither of these cases involved an action under G. L. c. 240, § 14A." 389 Mass. at 573-574.[10]

With the benefit of the admonition in *Whitinsville*, we think that if on this record exhaustion is not required, no owner would be likely to follow the administrative route where a use is questioned by a zoning enforcement official. General Laws c. 231A would become the normal method of challenge.

We are further influenced by the fact that a construction of G. L. c. 231A which would allow the plaintiffs to seek relief here, without following the administrative route, would be counter to the policy of c. 40A, § 7, even if not forbidden by the express words of that statute, see *Banquer* at 574-575, and might result in premature interference with administrative action. Cf. *J. & J. Enterprises, Inc.* v. *Martignetti*, 369 Mass. at 539 (exhaustion policy is similar to that precluding premature interference with a pending criminal proceeding).

There is no showing that the remedy of c. 40A is here inadequate, that the local officials are bowing to improper pressures, that the question is one purely of law,[11] or that any other exception

---

[10]We are aware that language in *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. at 207 n.3, may seem inconsistent with our conclusion. However, the building inspector in that case also sought a judicial determination of rights, and it does not appear that he urged that exhaustion principles be applied. In any event, *Cape Resort Hotels* preceded *Banquer* and was not discussed there, while *Goldman, supra*, a case applying exhaustion principles, was.

[11] See, e.g. *Gamache* v. *Acushnet*, 14 Mass. App. Ct. 215, 222-223 (1982).

to the doctrine of exhaustion is here applicable. Unlike the situation in *Banquer*, there is no statutory directive here excusing exhaustion.

For these reasons, the matter is remanded to the Superior Court with directions to dismiss the action.[12]

*So ordered.*

---

[12] We do not intimate in any way that we disagree with the judge's reasoning on the merits, but determine only that this is a matter which should first have been addressed by the board of appeal. We also note that the judge in relying on *Banquer* did not have the benefit of *Whitinsville* in ruling on this difficult issue.

Should the defendant, notwithstanding the careful opinion of the trial judge, continue to believe that similar sales by the plaintiffs would be in violation of Falmouth's zoning by-law, an appeal pursuant to c. 40A could be accomplished with less disruption if, upon being informed by the plaintiffs of an impending sale, the defendant were to issue an order in writing forbidding the sale forthwith, rather than awaiting the day of sale.